Helen CAMPO, Plaintiff,

v.

The NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM and the City of New York, Defendants.

No. 85 Civ. 10055 (GLG).

United States District Court, S.D. New York.

Feb. 18, 1987.

**896**

Legal Services for the Elderly, New York City, for plaintiff; Edgar Pauk, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendants; David Drueding, Anne Carson, of counsel.

GOETTEL, District Judge:

The plaintiff, Helen Campo, is the widow of a former employee of the New York Department of Sanitation ("Department"). The defendants are the City of New York ("City"), and the New York City Employees' Retirement System ("NYCERS"), which provides retirement benefits to City employees and their designated beneficiaries. The defendants move to dismiss the amended complaint for failure to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). The plaintiff cross-moves for sanctions against the defendants for filing a groundless and frivolous motion. As discussed below, the defendants' motion to dismiss is granted and the plaintiff's motion for sanctions is denied.

*Background*

The plaintiff's husband worked for the Department for seventeen years. In October 1980, he was forced to retire because of a disabling illness. In November 1980, he received a form from NYCERS, which he completed and returned to obtain information about the various retirement plans that were available to him.

In December 1980, NYCERS advised Mr. Campo that it had accepted the Department Medical Board's recommendation to retire him on ordinary disability. He began receiving pension benefits in January 1981.[1]

Between March 2, and March 16, 1981, Mr. Campo was in Texas to undergo heart surgery. The plaintiff alleges that, shortly after her husband returned from Texas, he filled out the pension application form in her presence, selecting "Option I,"[2] which he said would pay the plaintiff survivor's benefits after he died. She claims he returned the papers to NYCERS by certified mail, return receipt requested, and that the receipt was returned in due course. However, the plaintiff can no longer locate the receipt.

On March 26, 1981, NYCERS purportedly wrote to Mr. Campo, advising him how much money he would receive monthly under the various retirement option plans. The plaintiff asserts that, so far as she knows, her husband never received this

---

**1.** As of January 1981, Mr. Campo had not yet selected a retirement option plan. Neither party indicates the amount of the payments he began receiving that month, or under what retirement option plan the payments were being made.

**2.** As set forth by the plaintiff,

Option I provided, in relevant part, that, Until the first payment on account of any benefits is made, the beneficiary [i.e., the member] ... may elect to receive such benefit in a retirement allowance payable throughout life, or the beneficiary ... may ... elect to receive the actuarial equivalent at that time of

... his pension ... in a lesser pension payable throughout life with the provision that: Option 1.a. If he die before he has received in payments the present value of ... his pension ... as it was at the time of his retirement, the balance shall be paid, in the form of a lump sum or the actuarial equivalent in the form of an annuity, to his legal representatives or to such person as the beneficiary ... has nominated or shall nominate by written designation duly acknowledged and filed with the Board.

[New York City Administrative Code § ] B3–46.0. Amended Complaint ¶ 13.

letter.[3] According to the amended complaint, the only correspondence Mr. Campo received from NYCERS was a letter, in August 1981, regarding certain tax aspects of his pension.

Mr. Campo died on May 27, 1984, at the age of 53. One week later, NYCERS notified the plaintiff that she would not receive survivor's benefits.[4] Mrs. Campo wrote to the Mayor protesting NYCERS' action, and insisting that her husband had selected a retirement option that specifically provided for her to receive survivor's benefits, which were now being denied to her.

Mrs. Campo's letter was referred to NYCERS. On October 4, 1984, NYCERS responded, enclosing a copy of its letter to Mr. Campo, dated March 26, 1981, which set forth the amount of payments under the different option plans. Presumably, the March 26th letter, which the plaintiff asserts her husband never received, would have revealed that the monthly payments Mr. Campo was receiving were higher than they would have been under Option I.

On October 9, 1984, after receiving NYCERS' October 4th letter, Mrs. Campo visited NYCERS. At first, she was told that her husband had selected the "maximum" plan, which pays the highest benefits to the retiree during his lifetime, but provides no survivor's benefits. After she asked to see the document reflecting that selection, a NYCERS employee told her that NYCERS had never received any selection form from her husband. The employee said that NYCERS had sent her husband a notice indicating that he had sixty days to respond and choose an option plan before being listed as having selected the irrevocable "maximum option" by default.[5] Mrs. Campo asserts that her husband did not receive this notice, which was supposedly sent by regular mail on May 5, 1981. The plaintiff contends that NYCERS should have sent this notice by certified mail, return receipt requested, to be sure it was received.[6]

On June 25, 1985, plaintiff's counsel wrote to NYCERS to appeal its denial of the plaintiff's survivor's benefits. The plaintiff offered to testify at a hearing. NYCERS denied her appeal without conducting a hearing. Mrs. Campo asserts that she has been deprived of a valuable property right.[7] She contends that NYCERS' refusal to afford her a hearing was a deprivation of property without due process of law in violation of the fourteenth amendment of the United States Constitution. The complaint states other causes of actions that similarly allege a deprivation of due process of law, and several pendent state law claims.

*Discussion*

The defendants move to dismiss the complaint arguing first that the plaintiff's claims are predicated upon an alleged negligent act or omission by NYCERS, namely, losing or misplacing Mr. Campo's letter selecting Option I for his retirement plan. The defendants assert that negligent acts by NYCERS or the City do not constitute a cognizable due process claim. *See Daniels*

---

3. Mrs. Campo notes that mail was frequently stolen from their home mailbox and that this may explain the Campo's non-receipt of NYCERS' correspondence.

4. The amended complaint does not indicate whether NYCERS learned of Mr. Campo's death independently or was simply responding to a claim by Mrs. Campo for survivor's benefits.

5. Apparently, it is NYCERS' practice to assign the "maximum option" by default when no other option is selected by the retiree. Amended Complaint ¶ 20. At oral argument, defendants' counsel stated that the applicable regulations compel this procedure.

6. Paradoxically, Mr. Campo's alleged use of certified mail, return receipt requested, to send correspondence to NYCERS did not necessarily ensure receipt. NYCERS claims not to have received the pension selection papers purportedly sent by Mr. Campo. The plaintiff says the receipt was returned but she cannot locate it. Moreover, even if she were able to find the receipt, it alone would not confirm the contents of the certified delivery.

7. Pursuant to the New York State Constitution, "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." N.Y. Const. art. V, § 7. However, the "member" here was Mr. Campo, not the plaintiff.

*v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). The plaintiff responds that her federal causes of action are not based on defendants' negligence. Accordingly, we need not address this aspect of the defendants' motion to dismiss.

The defendants' second basis for moving to dismiss is that, even if the plaintiff has been deprived of a property interest, she has still not been deprived of due process because adequate procedures are available to bring her claim in an article 78 proceeding pursuant to N.Y.Civ.Prac.Law & R. § 7803 (McKinney 1981), or, alternatively, in a state court action for breach of contract. The plaintiff asserts that the defendants fail to understand that her federal claims for deprivation of property without due process challenge the adequacy of the defendants' procedures, not merely the denial of her claim, and, as such, constitute a cognizable constitutional claim. She argues, in effect, that she has a constitutional right to a hearing before the defendants can finally deny her claim for survivor's benefits.

A threshold issue in considering the plaintiff's claims is whether she has a viable property interest upon which to base a claim for deprivation without due process. This is not as clearcut as the plaintiff would have us believe. Certainly her husband had a property interest in his retirement benefits. *See Basciano v. Herkimer,* 605 F.2d 605, 609 (2d Cir.1978); *Gendalia v. Gioffre,* 606 F.Supp. 363, 366 (S.D.N.Y. 1985); *Siletti v. New York City Employees' Retirement System,* 401 F.Supp. 162, 167 (S.D.N.Y.1975). However, Mrs. Campo had no direct interest in those benefits. Her claim is asserted as a third-party beneficiary under her husband's contract with the defendants. Her interest, if any, is a future contingent interest, or a chose in action, based on her contention that (1) she was named as her husband's beneficiary, (2) he selected a plan that provided survivor's benefits, and (3) she survived her husband. These claims may well state a cause of action upon which Mrs. Campo has a

right to sue. However, they do not necessarily entitle her to an administrative hearing.

Since the defendants have moved to dismiss, we must give plaintiff's factual allegations the most favorable interpretation. The "complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). Consequently, we hesitate to resolve the instant motion based solely on the questionable validity of the plaintiff's property interest. Assuming that Mrs. Campo has a valid claim for survivor's benefits under her husband's retirement plan, and assuming that this constitutes a property interest, we must ask whether she was deprived of this property interest without due process.

As a general rule, an individual is entitled to some form of hearing before being finally deprived of a property interest. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The nature and time of such a "hearing" may vary enormously depending on the circumstances of any particular situation. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). The Supreme Court has held that when the property involved constitutes the "very means by which to live" a hearing must take place prior to even an initial deprivation. *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). When, however, the deprivation does not necessarily implicate a basic means of sustenance, a post-deprivation hearing may afford adequate due process protection. *See Logan v. Zimmerman Brush Co., supra,* 455 U.S. 422, 102 S.Ct. 1148; *Mathews v. Eldridge, supra,* 424 U.S. 319, 96 S.Ct. 893.

In *Mathews v. Eldridge,* the Supreme Court established a three-prong test for determining the constitutional sufficiency

of administrative procedures. The *Mathews* test requires the court to consider

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

 ▪ The private interest in this suit is the plaintiff's claimed right to survivor's benefits under her late husband's retirement pension plan. However, pension benefits, including survivor's benefits, do not necessarily implicate "the very means by which to live." *Goldberg v. Kelly, supra,* 397 U.S. at 264, 90 S.Ct. at 1018. *Cf. Mathews v. Eldridge, supra,* 424 U.S. at 340–41, 96 S.Ct. at 905 (disability benefits not based on financial need). Thus, no pre-deprivation hearing is required. The plaintiff argues, however, that the defendants failed to provide even a post-deprivation hearing, and that this violated her fourteenth amendment right to due process. Consequently, we move on to the second prong of the *Mathews* test to examine whether the procedures used by NYCERS, which did not include an administrative hearing, created a risk of erroneous deprivation.

 ▪ We first note that not every situation will require a "trial-type hearing" in which witnesses are examined and cross-examined. *See Basciano v. Herkimer, supra,* 605 F.2d at 610–11; *Siletti v. NYCERS, supra,* 401 F.Supp. at 167. Mrs. Campo presented her claim by letter to the Mayor. Her letter was forwarded to NYCERS for consideration. She also visited NYCERS where she was advised of its procedures and the reasons for NYCERS' decision, based upon documents in its files regarding her husband's retirement plan. The plaintiff's counsel thereafter wrote to NYCERS to appeal its denial of the plaintiff's claim for survivor's benefits. NYCERS responded, denying the appeal.

We find the risk of erroneous deprivation in this case must be deemed minimal. Unlike a case involving a welfare recipient's entitlement to continued benefits, or even a disabled person's claim of disability, the resolution of the plaintiff's claim revolves around documentary evidence—the correspondence between NYCERS and Mr. Campo. The plaintiff presses for a hearing as necessary to evaluate the credibility of witnesses, mostly herself, to contend that her husband chose a certain retirement option, returned the proper form, and often did not receive mail sent to him. We find the probable value of such an administrative hearing is minimal since it is unlikely to unearth information other than the correspondence in NYCERS' files and the claims Mrs. Campo has already made by letter and personal appearance at NYCERS' office.

Under the third part of the *Mathews* test, we must balance the plaintiff's interest in receiving the claimed survivor's benefits against the burden upon the defendants of requiring them to provide an administrative hearing to anyone challenging the terms of a NYCERS retirement option plan. The burden on the defendants is clearly the overwhelming consideration. The City employs vast numbers of workers. Were each retiree (or a surviving relative) who was dissatisfied with his or her benefits entitled to an administrative hearing, the City might soon run out of money to pay any benefits at all. Such a requirement would also be more likely to slow the processing of retirement claims than to expedite them.

As the defendants have noted, anyone with a claim against an administrative decision may seek speedy judicial relief in a state court proceeding pursuant to article 78, N.Y.Civ.Prac.Law & R. 7803 (McKinney 1981). This includes a challenge to the administrative procedures as well as the decision. *See Solnick v. Whalen,* 49 N.Y.2d 224, 401 N.E.2d 190, 194, 425 N.Y. S.2d 68, 72 (1980). Moreover, Mrs. Campo has a second avenue for seeking relief, *i.e.,*

a state common law action for breach of the contract. The New York State Constitution considers a City employee's participation in a pension plan to be a contractual relationship. *See supra* note 7. Since the plaintiff claims to be a third-party beneficiary of her husband's pension, she could assert her contractual claim for survivor's benefits in state court. She fails, however, to state a federal cause of action for deprivation of constitutional rights.

*Conclusion*

The plaintiff fails to state a federal claim upon which relief can be granted.[8] Her alleged property interest is, arguably, insufficient for purposes of stating a due process claim. However, even assuming the validity of such an interest, an analysis of the factors enumerated in *Mathews v. Eldridge* demonstrates that the defendants have provided the plaintiff with adequate due process of law. Accordingly, we grant the defendants' motion to dismiss.[9] The Clerk shall enter judgment for the defendants.

SO ORDERED.

---

**8.** Having found that the plaintiff fails to state a federal cause of action for deprivation of due process, we decline to exercise jurisdiction over her pendent state claims.

**9.** Since we grant defendants' motion to dismiss, it follows that it was not frivolous, and we deny plaintiff's motion for sanctions.