**Helen CAMPO, Plaintiff–Appellant,**

**v.**

**The NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM and The City of New York, Defendants–Appellees.**

**No. 9, Docket 87–7237.**

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1987.

Decided March 31, 1988.

Edgar Pauk, New York City (Legal Services for the Elderly, New York City, of counsel), for plaintiff-appellant.

Lin B. Saberski, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, of counsel), for defendants-appellees.

Before LUMBARD and MINER, Circuit Judges, and FRANK A. KAUFMAN, District Judge, United States District Court for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, District Judge:

Justin Campo retired in October, 1980, after seventeen years of employment with New York City's Department of Sanitation, because of a disabling illness. In December, 1980, the New York City Employees' Retirement System (NYCERS) approved its Medical Board's recommendation concerning Mr. Campo's retirement and began to pay retirement benefits to him in January, 1981.

NYCERS states that it mailed a letter to Mr. Campo dated March 26, 1981 which set forth the sums of money to which Mr. Campo would be entitled under various alternative retirement options and gave Mr. Campo the opportunity to select the option of his choice. Mrs. Campo, wife of Mr. Campo and plaintiff in this case, claims that, as far as she knows, her husband never received that letter. NYCERS also says it sent to Mr. Campo a letter dated May 5, 1981, advising him that if he did not select an option within sixty days, NYCERS, according to its established procedures, would select for him the option providing for the maximum lifetime benefit with no survivor's benefit. The record does not disclose Mrs. Campo's position as to whether her husband received the May 5, 1981 letter. In any event, Mrs. Campo states that her husband, in her presence, (1) filled out a pension application form sometime between March 16, 1981 and May 11, 1981; (2) selected Option I, which provides for a survivor's benefit; and (3) mailed that form to NYCERS by certified mail, return receipt requested. Mrs. Campo further states that the return receipt was received by her husband, and that she watched him place it in a desk drawer. However, Mrs. Campo says she has been unable to find that receipt. She states that her husband received only one further letter from NYCERS, in August, 1981, informing him about Internal Revenue Service reporting requirements with regard to his retirement arrangements. That letter also noted that Mr. Campo had $115,333.48 in reserve in his retirement account. Mrs. Campo says that, as far as she knows, her husband never received any notice from NYCERS indicating that his application for Option I benefits had not been received.

Mr. Campo apparently received benefit payments from NYCERS for about three years before he died on May 27, 1984. One week later, NYCERS mailed to Mrs. Campo a letter informing her that she would not receive any survivor's benefit. On October 9, 1984, Mrs. Campo went to a NYCERS office, where she was told that her husband had selected an option which did not provide for a survivor's benefit. However, on that occasion, NYCERS personnel were unable to produce a document reflecting that selection by Mr. Campo. They told Mrs. Campo that NYCERS had selected the maximum lifetime payments option for her husband because he had not responded within sixty days of the May 5, 1981 letter.

On June 25, 1985, Mrs. Campo's counsel filed an appeal by letter with NYCERS, setting forth her version of the facts and indicating that Mrs. Campo desired to testify at a hearing concerning her husband's election of benefits. By letter dated July 10, 1985, NYCERS denied Mrs. Campo's appeal without granting her a hearing. Apparently, the New York City Administrative Code [1] does not require a hearing either before or after a beneficiary like

---

1. New York City Administrative Code § 13–177 *et seq.* (1986). *See* Amended Complaint at 9.

Mrs. Campo is denied retirement benefits by NYCERS, nor does NYCERS appear to provide a hearing under those circumstances.

On December 27, 1985, Mrs. Campo filed this section 1983 action in the United States District Court for the Southern District of New York, claiming that NYCERS' failure to grant her the hearing she had requested deprived her of property without due process of law, in violation of the Fourteenth Amendment. Mrs. Campo also advances several state law causes of action against NYCERS, including violations of the New York State Constitution, breach of contract and breach of fiduciary duty.

The district court granted NYCERS' motion to dismiss, 653 F.Supp. 895 concluding that the informal procedures used by NYCERS to review Mrs. Campo's claim and the availability of state court Article 78 and breach of contract actions provide the required procedural due process. In this appeal, Mrs. Campo challenges that holding.[2]

NYCERS urges two grounds for affirmance of the decision below. First, NYCERS takes the position that Mrs. Campo's claim is predicated on alleged negligent acts or omissions by NYCERS in handling her husband's benefits selection and that such negligence cannot give rise to a procedural due process claim in the light of *Daniels v. Williams*, 474 U.S. 327, 330–32, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed. 2d 677 (1986). The district court apparently concluded that Mrs. Campo's claim was not grounded in negligence, and therefore did not address that issue.

NYCERS' second contention, that its denial to Mrs. Campo of an administrative hearing did not deprive her of due process because the State of New York offers adequate remedies in its courts, goes to the heart of this case. The district court, after expressing doubt as to whether Mrs. Campo has a property interest in her husband's pension, assumed that such an interest ex-

ists and then applied the standards enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether NYCERS should have given her a hearing. In so doing, the district court concluded that NYCERS' informal review of Mrs. Campo's claim and the availability of either an Article 78 proceeding or a breach of contract action in state court to entertain Mrs. Campo's challenge, provided all the procedural process due her under the U.S. Constitution.

### DISCUSSION

#### I.

42 U.S.C. § 1983 provides as follows:

Every person who, *under color of any statute*, ordinance, regulation, custom, or usage, *of any State* or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of *any rights*, privileges, or immunities *secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added).

█ NYCERS is a New York City administrative agency which qualifies as a "person" acting "under color" of state law. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 669, 98 S.Ct. 2018, 2024, 56 L.Ed. 2d 611 (1978). Mrs. Campo has alleged that NYCERS has deprived her of a property interest without due process of law.

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), Justice Stewart wrote that "[t]he Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Id.* at 571–72, 92 S.Ct. at 2706 (footnote omitted). The New York State Constitution provides that "membership in any pension or retirement system of the state or a civil division thereof shall be a contractual relationship, the

---

2. The district court, after concluding that Mrs. Campo had failed to state a federal cause of action, declined to exercise pendant jurisdiction over the state law claims. We agree with that disposition.

benefits of which shall not be diminished or impaired." N.Y. Const. art. V, § 7. In this case, Mrs. Campo claims that she was designated by her husband as his beneficiary. The district court, in granting NYCERS' motion, assumed that Mrs. Campo has asserted a property interest. We also so assume in the context of this appeal. Therefore, Mrs. Campo has stated a cause of action under 42 U.S.C. § 1983 if she has been denied procedural due process.

## II.

■ The core issue presented by Mrs. Campo is whether NYCERS' refusal to hold the administrative hearing she requested violates her right to procedural due process. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 1099, 47 L.Ed.2d 310 (1976), the Supreme Court established standards for determining when a hearing is necessary *prior* to the deprivation of a claimed property interest. In *Mathews*, the plaintiff had been denied a trial-type hearing prior to a final determination that he was not eligible for Social Security disability payments. In this case no pre-deprivation hearing was needed or could have taken place. Because a judicial hearing in a state court was available to Mrs. Campo on timely demand, due process requirements for a post-deprivation hearing are met for the reasons discussed *infra*, regardless of the application, *vel non*, of *Mathews*.[3]

## III.

■ The fact that Mrs. Campo has a due process right to a hearing does not in and of itself mean that the hearing must take place at the administrative level. Mrs. Campo complains only of NYCERS' failure to grant her a hearing and "refers to no other right, privilege, or immunity secured by the Constitution or federal laws other

than the Due Process Clause of the Fourteenth Amendment *simpliciter*." *Parratt v. Taylor*, 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

In *Parratt*, an inmate of a Nebraska prison brought a section 1983 action against prison officials who allegedly lost certain hobby materials which the inmate had ordered by mail. Those officials, plaintiff asserted, did not follow normal mail handling procedures required by the prison's own operating procedures. No administrative hearing was available to plaintiff, who claimed that the loss of his property without provision of an administrative hearing denied him procedural due process. In rejecting plaintiff's contention, Justice Rehnquist wrote:

Unquestionably, respondent's claim satisfies three prerequisites of a valid due process claim: the petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss, even though negligently caused, amounted to a deprivation. Standing alone, however, these three elements do not establish a violation of the Fourteenth Amendment. Nothing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations "without due process of law."

451 U.S. at 536–37, 101 S.Ct. at 1913–14 (footnote and citation omitted).

■ In *Parratt* the Supreme Court held that the tort remedies provided by Nebraska in its state courts offered the prisoner adequate procedural due process. *Id.* at 544, 101 S.Ct. at 1917.[4] That holding has

---

3. Although *Mathews* only addressed the issue of when a predeprivation trial-type hearing is required, the *Mathews* standards generally have been used to determine the nature and timing of due process hearings, whether pre- or post-deprivation. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 675–83, 97 S.Ct. 1401, 1414–19, 51 L.Ed.2d 711 (1977); *Signet Construction Corp. v. Borg*, 775 F.2d 486, 490–92 (2d Cir.1985); *McClelland v. Massinga*, 786 F.2d 1205, 1210–16 (4th Cir.

1986); *Tomai–Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1232–36 (4th Cir.1985); *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1113–14 (D.C.Cir.1985).

4. There was no claim in *Parratt* that the alleged tortious act was part of a particular custom or policy of the Nebraska penal authorities. Nor is there any contention in this case that NYCERS' alleged deprivation of Mrs. Campo's asserted

been applied to non-tort actions involving only procedural due process claims. *See, e.g., Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 888 (2d Cir.1987); *Giglio v. Dunn,* 732 F.2d 1133, 1135 (2d Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984).

### IV.

Article 78 of the New York Civil Practice Law and Rules provides a summary proceeding which can be used to review administrative decisions. That article makes available types of relief which, before its enactment, were obtainable in New York's courts only by writs of certiorari, mandamus or prohibition. Specifically, Article 78 states, in pertinent part, as follows:

The only questions that may be raised in a proceeding under this article are:

1. whether the body or officer failed to perform a duty enjoined upon it by law; or

2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or

3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion ...; or

4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.[5]

Article 78 "provides the mechanism for challenging a specific decision of a state administrative agency." *Liotta v. Rent Guidelines Board,* 547 F.Supp. 800, 802 (S.D.N.Y.1982). Mrs. Campo argues that Article 78 is not an adequate remedy because (1) in an Article 78 court she carries the burden of overcoming a presumption of administrative regularity and (2) the Article 78 court will not itself assess the credibility and reliability of her testimony but rather will confine itself to deciding whether NY-CERS' denial of her claim was arbitrary and capricious. An Article 78 court can, however, entertain Mrs. Campo's procedural due process challenge and decide if a remand for an administrative hearing is required.

In *Solnick v. Whalen,* 49 N.Y.2d 224, 401 N.E.2d 190, 425 N.Y.S.2d 68 (1980), the Court of Appeals of New York noted that an Article 78 proceeding was available to challenge procedures used to revise Medicaid reimbursement rates. In *Solnick,* Judge Jones wrote that such a challenge is "available as a question for review in such a proceeding under the third question authorized by CPLR 7803—whether the 'determination was made in violation of lawful procedure [or] was affected by an error of law'." 49 N.Y.2d at 231, 401 N.E. 2d at 194, 425 N.Y.S.2d at 72. If the record before the Article 78 court demonstrates a lack of appropriate procedure, the Article 78 court has the authority and seemingly the duty to order the agency to conduct a proper hearing, regardless of the type of substantive claim involved. *See In the Matter of Pasta Chef, Inc. v. State Liquor Auth.,* 54 A.D.2d 1112, 389 N.Y. S.2d 72 (4th Dep't 1976), *aff'd,* 44 N.Y.2d 766, 377 N.E.2d 480, 406 N.Y.S.2d 36 (1978). Thus, if Mrs. Campo had timely sought Article 78 review, a New York court would have had the authority to remand this case to NYCERS for an appropriate administrative proceeding.

The procedures afforded by Article 78 have been held to constitute appropriate review of whether a rent guideline order was invalid because it was adopted at a meeting allegedly so unruly that the landlord plaintiffs were deprived of property without due process of law. *See Liotta v. Rent Guidelines Board, supra.* In *Liotta,*

property right was anything other than an isolated instance, or resulted from a practice or custom of that agency. *See also* Bandes, *Monell, Parratt, Daniels and Davidson: Distinguishing a Custom or a Policy from a Random, Unauthorized Act,* 72 Iowa L.Rev. 101, 122–23 (1986).

Accordingly, this Court treats Mrs. Campo's claim as based on an isolated incident, as did the Supreme Court when it considered the claim in *Parratt.*

5.  N.Y.Civ.Prac.L. & R. 7803.

the district court commented as follows about the availability of an Article 78 proceeding:

> Plaintiffs cannot manufacture a § 1983 claim by pointing to the allegedly defective meeting while ignoring that part of the regulatory process that serves to redress administrative error. Rather, in considering whether defendants have failed to afford plaintiffs due process in connection with the rent guidelines, the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law.

*Id.* at 802.

In *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.), *cert. denied*, 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984), Judge Van Graafeiland concluded that a tenured high school principal, who claimed that his resignation was coerced, could challenge the voluntariness of his resignation in an Article 78 proceeding and that that opportunity provided all the process constitutionally due. After noting that plaintiff's right to seek review under Article 78 was apparently barred by the four-month statute of limitations period for instituting an Article 78 action, Judge Van Graafeiland wrote that "so long as appellant had a reasonable time in which to seek Article 78 relief, he cannot make a legitimate claim of due process violation because his claim now may be barred." *Id.* at 1135 n. 1.[6] This Court has expressed similar views in *Oberlander v. Perales*, 740 F.2d 116, 120 (2d Cir.1984), where a health care provider brought a section 1983 action alleging that its Medicaid reimbursement rate had been reduced by a New York state agency without a hearing, and in *Eastway*, where a construction company claimed that it had been denied, without due process of law, the opportunity to engage in public redevelopment projects. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 250 (2d Cir.1985), *cert. denied*, —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

In *Escalera v. New York City Housing Auth.*, 425 F.2d 853 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed. 2d 91 (1970), tenants in Housing Authority (HA) projects brought a section 1983 suit for violations of their due process rights to challenge eviction and penalty orders of the HA. The HA took the position that any due process defects in the procedures it had used for terminating tenancies were reviewable and curable in an Article 78 proceeding. Rejecting that position, Judge Smith wrote:

> Although upon commencement of an article 78 action, the holdover action by the HA may be stayed, the tenant must in effect prove that the HA decision was arbitrary and capricious or an abuse of discretion in order to get relief. Thus, the tenant has the burden of commencing an article 78 action and of overcoming the presumption of regularity attacking the acts of the HA. Moreover, the tenant must carry this burden without access to his own folder, the exact basis for the HA decision against him or a transcript of the [Board] hearing. Such review commenced by the tenant cannot be a substitute for fair procedures in the decision of the HA in the first instance.

*Id.* at 866 (footnote omitted). However, *Escalera* focused on pre-deprivation procedures and did not discuss whether the Article 78 court could have been asked to remand the case to the HA for an administrative proceeding in a post-denial context to be conducted in full accord with procedural due process standards, and therefore does not affect the outcome of this case.

In the light of those authorities we hold that the State of New York, through Arti-

---

6. N.Y.Civ.Prac.L. & R. 217 provides for a four-month statute of limitations for Article 78 actions. Since NYCERS denied Mrs. Campo's appeal on July 10, 1985, Mrs. Campo may be barred by limitations from presently proceeding pursuant to Article 78. However, the fact that Article 78 may not now be available to Mrs. Campo for that reason would not affect the result herein because Mrs. Campo had available an Article 78 remedy whether she timely utilized it or not. *See also Solnick*, 49 N.Y.2d at 231, 401 N.E.2d at 194, 425 N.Y.S.2d at 72.

cle 78, offered to Mrs. Campo a due process hearing at a meaningful time and in a meaningful manner.[7]

### V.

Our conclusion does not offend the doctrine of nonexhaustion of state remedies set forth in *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982) (state administrative remedies) and *Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974) (state judicial remedies). Mrs. Campo has asserted only one claim under federal law, *i.e.*, denial of procedural due process pursuant to the Fourteenth Amendment. Mrs. Campo has not been required first to present and to exhaust that contention in a state court. Rather it has been entertained—and decided against her—in this federal case because, as discussed *supra, Parratt* teaches that a state may provide procedural due process in either an administrative or a judicial setting.

---

**7.** As the district court noted, Mrs. Campo may also have available to her, in addition to Article 78 review, a breach of contract claim against NYCERS in a New York state court. The New York Constitution provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship...." N.Y. Const. art. V, § 7. Thus, Mrs. Campo may be able successfully to assert a contract claim. The availability of such an action in the New York courts in and of itself may provide a "meaningful means by which to assess the propriety" of NYCERS' action "at some time after the initial taking," and may therefore "satisfy the requirements of procedural due process." *Parratt*, 451 U.S. at 539, 101 S.Ct. at 1915 (footnote omitted). We note that limitations may not affect Mrs. Campo's ability to pursue a breach of contract claim since N.Y. Civ.Prac.L. & R. 213 provides a six-year limitations period for breach of contract actions with limitations generally beginning to run at the time of the breach. *See Medical Facilities, Inc. v. Pryke*, 62 N.Y.2d 716, 717, 476 N.Y.S.2d 532, 534, 465 N.E.2d 39, 41 (1984). However, if Mrs. Campo institutes a state court contract action it will be up to the state court in which that proceeding takes place to make that determination. As indicated *supra* at —— n. 6, the fact that limitations may or may not have run in connection with Mrs. Campo's exercise of her rights in a state court does not mean that Mrs. Campo has not been afforded an appropriate due process opportunity.