**HANLIN GROUP, INC. (f/k/a LCP Chemicals & Plastics, Inc.), Plaintiff,**

v.

**POWER AUTHORITY OF the STATE OF NEW YORK and Village of Solvay, Defendants.**

No. 87 Civ. 0570 (JMW).

United States District Court, S.D. New York.

Jan. 13, 1989.

Michael Press, Whitman & Ransom, New York City, and Philip Chabot, Chartered, Washington, D.C., for plaintiff.

Thomas J. Lynch, Walter N. Munson, Wiles, Fahey & Lynch, Syracuse, N.Y., for defendant Village of Solvay.

Arthur T. Cambouris, Asst. Gen. Counsel, and Mitchell Borger, New York City, for defendant PASNY.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Defendants have moved to dismiss the complaint on the grounds of lack of jurisdiction, improper venue, violations of applicable statutes of limitations, and failure to state a claim upon which relief can be granted. Plaintiff claims jurisdiction under 28 U.S.C.A. §§ 1331 ("federal question") and 1332 ("diversity"). This motion is granted pursuant to Fed.R.Civ.P. 12(b)(1) on the ground that this Court refuses jurisdiction over this action pursuant to the *Burford* abstention doctrine.

## I. BACKGROUND

This is a rate dispute case concerning the sale of electric power. There are three parties to this action. Plaintiff Hanlin (f/k/a "LCP Chemicals and Plastics, Inc.", hereinafter "Hanlin" or "LCP") is a Delaware corporation with headquarters and principal place of business in New Jersey. Hanlin operates a chlor-alkali manufacturing facility in the County of Onandaga, New York. Hanlin obtains retail electric service for this facility from the municipal electric department of the Village of Solvay, New York.

Defendant PASNY of the State of New York ("PASNY) is a public authority of the State of New York created by statute, and set forth in the Public Authorities Law of the State of New York, Article 5, § 1000, *et seq.* The PASNY operates the Niagara and St. Lawrence hydroelectric projects under authority of licenses issued to it by the Federal Energy Regulatory Commission.[1] The PASNY sells electric power wholesale to municipalities that in turn retail the power to customers at rates regulated and approved by the PASNY.

Defendant Village of Solvay ("Village") is a New York State municipal corporation. The Village owns and operates a municipal electric system which obtains its bulk power supply from the PASNY. The Village sells power to the system's residential, commercial and industrial customers at retail rates approved by the PASNY.

Plaintiff contracted with defendant Village for electric power on May 22, 1984. In August, 1986, the Village performed a cost of service study and prepared a revision of its electric power retail rates to be presented to PASNY. The PASNY published notice of its proposed rule making action concerning its proposed rate revisions in the New York State Register on August 27, 1986. Further, on September 8 and 15, 1986, the PASNY published notices in a local newspaper of the proposed rate revisions and public hearing before the Village Board to be held on September 22, 1986.

At the September 22, 1986 hearing, a representative of plaintiff Hanlin presented a written position statement and made oral remarks concerning the proposed rate revisions. The Board of Trustees of the Village adopted the proposed rate revisions on September 23, 1986. In a letter to the PASNY dated September 25, 1986, the Mayor of the Village summarized the results of the hearing and informed the PASNY of the adoption of the proposed rate revisions. Subsequently, on September 30, 1986, the Trustees of the PASNY adopted a resolution approving the rate revisions proposed by the Village. Notice of the PASNY's approval of the proposed rate revisions was published in the New York Register on October 22, 1986. The revised rates became effective on October 24, 1986.

The PASNY received a letter from Hanlin on February 10, 1987, requesting a declaratory ruling from the PASNY concerning the approved revised rates. By letter

---

1. As licensee for the Niagara Project, 19 F.P.C. 186 (1958), PASNY is charged with the responsibility to allocate and sell Niagara project power in accordance with the terms of the Niagara Redevelopment Act, 16 U.S.C. § 836. *See generally, Power Authority of the State of New York v. Federal Energy Regulatory Comm.*, 743 F.2d 93 (2d Cir.1984).

dated March 5, 1987, the PASNY denied Hanlin's request for a declaratory ruling.

Hanlin filed a complaint in this Court against the PASNY on January 28, 1987, and an amended complaint against the PASNY and the Village on March 19, 1987. Both the original and the amended complaints were served on the PASNY on March 27, 1987. The amended complaint alleges that procedures used by defendants to determine power rates, and the rates themselves, were unlawful. Plaintiff's claims sound in constitutional, statutory and contractual rights. Defendants each moved to dismiss the complaint arguing, among other things, that this Court lacks subject matter jurisdiction.

## II. DISCUSSION

Although federal courts have a "virtually unflagging obligation ... to exercise jurisdiction given to them," *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), certain exceptions to this rule exist. Pragmatic considerations of judicial efficiency, as well as reasons of comity between federal and state courts, have led to an expanding abstention doctrine. *See, e.g. Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed. 2d 444 (1967); *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The Supreme Court's abstention adjudications have recognized that abstention may be appropriate: "(1) to avoid a decision of a federal constitutional question where the case may be disposed of as a question of state law; (2) to avoid needless conflict with the administration of a state of its own affairs [*Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) ]; (3) to leave to the states the resolution of unsettled questions of state law [*Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) ]; and (4) to ease the congestion of the federal court docket' when a similar action is pending in state court. [*Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 817, 96

S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).]" *Society for Good Will to Retarded Children v. Cuomo,* 652 F.Supp. 515, 522 (E.D. N.Y.1987), *citing* C.A. Wright, Law of the Federal Courts 303 (4th ed.1983). Moreover, under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, abstention is appropriate to avoid federal court interference with pending state judicial proceedings. The particular type of abstention relevant in this case is *Burford* abstention, also known as administrative abstention.

### A. Purpose of Burford Abstention

*Burford* abstention is frequently employed as a means to "avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *American Disposal Services, Inc. v. O'Brien,* 839 F.2d 84, 87 (2d Cir.1988). *See also Corcoran v. Ardra Insurance Co.,* 842 F.2d 31, 37 (2d Cir.1988) (the purpose of *Burford* abstention is "avoiding interference with specialized state regulatory schemes.") Essentially, federal courts will defer due to the existence of a complex subject matter of special state interest, or the possibility of disturbing a detailed state regulatory scheme. *Long Island Lighting Co. v. Cuomo,* 666 F.Supp. 370, 399 (N.D.N.Y. 1987).

*Burford* concerned an action challenging an order of the Texas Railroad Commission granting a permit to drill oil wells. Jurisdiction of the federal district court was invoked because of diversity and a federal due process claim. The Supreme Court agreed with the district court's decision that it should decline to exercise jurisdiction because the Texas regulatory system governing oil conservation was complex and a matter of great public importance. Moreover, there was an effective state administrative system in place from which judicial review was available in state courts. *Burford,* 319 U.S. at 325, 63 S.Ct. at 1103. The Court found that should the federal courts exercise their jurisdiction,

delay, confusion and "needless federal conflict with the state policy [would be] the inevitable product of this double system of review." *Id.* at 327, 63 S.Ct. at 1104. *See also Alabama Public Service Comm'n v. Southern Ry Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (even though there was no dispute as to the clarity of state law, the Court allowed the district court to abstain from hearing the case primarily because it was a unique problem of local concern).

The analysis conducted to determine the applicability of *Burford* abstention focuses on the underlying rationale of administrative abstention. A court balances the plaintiff's choice of forum against possibilities for maintaining a harmonious relationship between state and federal governments. *Comment,* 46 U.Chi.L.Rev. 971, 979 (1979). Through application of *Burford* abstention, federal courts are able to "refrain from becoming involved with state policy making and enforcement procedures in complex areas of which are primarily the state's concern." *Society for the Good Will to Retarded Children v. Cuomo, supra,* 652 F.Supp. at 523.

## B. Applying *Burford*

■■■ The decision to invoke the *Burford* abstention doctrine must be made after considering many factors, no one criterion being dispositive. Courts that have ruled on the matter of administrative abstention have concentrated upon the following factors: the degree of specificity of the state regulatory scheme, the necessity for discretionary interpretation of state statutes, and whether the subject matter of the litigation is traditionally one of state concern.

### 1. *Specificity of Regulatory Scheme*

Foremost among the factors considered is the presence of a sophisticated and extensive state regulatory scheme involving a complicated area of special state concern.[2]

The Second Circuit recently relied upon this factor in dismissing an action on the basis of *Burford* abstention, in the case of *Law Enforcement Insurance Co., Ltd. v. James P. Corcoran,* 807 F.2d 38 (2d Cir. 1986). In *Law Enforcement,* an insurer sought a declaratory judgement on its contract rights against an insurance company. The Second Circuit abstained under the *Burford* doctrine because New York State had a comprehensive system regulating insurance companies with a unified method for formation of policy and determination of cases by administrative and judicial review.

The facts of the case at bar present an equally compelling argument for *Burford* abstention. The Power Authority Act extensively delineates the requirements, procedures and scope of authority of the PASNY. The Act authorizes the PASNY to regulate the rates charged by the publicly owned utilities which purchase power from the PASNY. N.Y.Pub.Auth.Law §§ 1005(5) and 1014 (McKinney 1982 & Supp.1987). The PASNY has established extensive procedures for the review of rate revision requests which are consistent with the State Administrative Procedure Act. N.Y.Comp.Codes R. & Regs. tit. 21, § 452.3(b) (1975). This section requires a public hearing, pursuant to notice, affording a reasonable opportunity to be heard by all interested parties. The statute further enumerates the specific data to be discussed at such hearings and requires that an appropriate record be kept in the event subsequent judicial or administrative review.

In addition, any adjustment of rates charged is heavily regulated by a long list of provisions setting forth appropriate formulas and considerations to be used in making such determinations. *Id.* at § 252.4. Clearly, the statutes contained in the New York Public Authorities Law and in the State Administrative Procedure Act

---

**2.** The Court notes that while the presence of this factor strongly indicates that *Burford* abstention is appropriate, it is not always a necessary factor. In *Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980), the Second Circuit applied the *Burford* doctrine even though complex issues of

state law were not present. The court reasoned that "the proper respect for the expertise of state officials and the expeditious and evenhanded administration of state programs counsel[ed] restraint on the part of federal courts." *Id.* at 964.

extensively regulate the actions of the PASNY. *See generally,* N.Y.Pub. Auth.Law §§ 1001–1015 and N.Y.Comp. Codes R. & Regs. tit. 21 § 452 (1975). The degree of specificity of these statutes suggests that abstention would be appropriate.

### 2. *Necessity for Discretionary Interpretation*

In addition to its specificity, the statutes are phrased in broad language which necessarily invoke the expertise and best judgment of the finder of fact. The legislature has required the PASNY

> in addition to other methods which it may find advantageous make provision so that municipalities and other subdivisions of the state now or hereafter authorized by law to engage in the distribution of electric power may secure a reasonable share of the power generated by such projects, and shall sell the same or cause the same to be sold ... at prices ... which shall assure the resale of such power to domestic and rural consumers at the lowest possible price.

Pub.Auth.Law § 1005(5).

As the court in *Burford* noted, when a statutory standard lends itself to variation in its application, litigation regarding such statute should not be entertained in a federal forum. The rationale for this proscription stems from a desire to prevent "conflicts in the interpretation of the state law, dangerous to the success of state policies." *Burford,* 319 U.S. at 334, 63 S.Ct. at 1107.

In the case at bar, the statute in contention is prone to subjective interpretation as to what constitutes the "lowest possible rates." Since reasonable minds could disagree as to how to ascertain which rates are lowest, federal courts could establish appropriate rates either above or below those determined in the state court. This would create a divisive rate schedule in which customers with substantially the same needs are charged different rates, encouraging plaintiffs to forum shop. To

avoid this result, this Court can abstain under *Burford.*[3]

### 3. *Subject Matter of State Concern*

Moreover, administrative abstention is appropriate in the present case because the subject matter of this case—utility rates—is traditionally one of state concern. *See Pacific Gas and Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 205, 103 S.Ct. 1713, 1723, 75 L.Ed.2d 752 (1983) (In reference to Atomic Energy Act, the Court stated that states have a "traditional responsibility in the field of regulating electrical utilities for determining questions of need, reliability, cost, and other related state concerns"); *Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375, 377, 103 S.Ct. 1905, 1909, 76 L.Ed.2d 1 (1983) (*citing Munn v. Illinois,* 94 U.S. 113, 24 L.Ed. 77 (1877)).

Even when no state law claim is presented, federal courts must abstain from adjudicating matters of "overriding state interest." *New Orleans Public Service v. City of New Orleans,* 798 F.2d 858, 862 (5th Cir.1986). Accordingly, great deference has been paid to state courts in the area of utility ratemaking. *Construction Aggregates Corp. v. Rivera,* 573 F.2d 86, 91 n. 4 (1st Cir.1978).

The intensely local nature of regulating public utilities is evidenced by the structure of the Federal Power Act which allocates jurisdiction over retail rates to the states. *New Orleans Public Service, supra,* 798 F.2d at 861. The state interest in regulating the field of public utilities is obvious. The state cannot function properly without the close regulation of this vital industry, and usurpation of this supervisory duty will create friction. As such "retail rate making [in this industry] is clearly a field left to the jurisdiction of the states." *Id.* at 860.

Plaintiff has not set forth a compelling federal interest in this matter. The only federal statute relied upon is the Niagara

---

**3.** *See Delaware County Elec. Coop. v. Power Authority,* Slip op. at 9, 82 Civ. 7256 (S.D.N.Y., June 11, 1985) [1985 WL 1620] (Rate-setting problems belong to agency discretion and the experts in that field, they are not issues susceptible of judicial resolution).

Redevelopment Act, 16 U.S.C. § 836—a law which is only applicable to energy derived from the Niagara River. There is no claim made as to interstate commerce. Plaintiff does, of course, argue that its procedural due process rights were violated in the establishment of the Village's rates. These constitutional claims, however, are simply tacked on to many and more substantial counts which arise under state law.[4] Indeed, the majority of plaintiff's claim arise under the New York regulatory scheme for the establishment of utility rates. Counts I, II, III, VI, X, XI, XII. Further, every count of the complaint alleges that the acts taken were "arbitrary, capricious, and an abuse of administrative discretion."

Thus, in deciding this case, the Court would inevitably be drawn into the complex process of utility rate setting in New York. That is precisely the activity area which *Burford* abstention intended to relegate to state adjudication. Therefore, the Court should abstain.

C.  Availability of State Remedy

■  Even though each of the factors discussed above suggests that *Burford* abstention is appropriate in this case, the Court is not free to abstain unless there is an adequate state remedy available to plaintiff. The Court finds that such a remedy exists. Apart from the extensive regulatory guidelines followed by the PASNY, administrative review is provided by the opportunity for a declaratory ruling from the PASNY, under § 205 of the State Administrative Procedure Act.

Plaintiff does not deny that judicial review is available in state court pursuant to Article 78 of the New York CPLR. Plaintiff claims, however, that an Article 78 proceeding is inadequate since it "provides no guarantee that rates, unlawfully collected by a municipal electric utility ... may be refunded to a retail customer." LCP mem. at 16, 17. This is plainly incorrect. Pursuant to an Article 78 proceeding, CPLR section 7806 provides:

The judgement may grant the petitioner the relief to which he is entitled, or may dismiss the proceeding on the merits or with leave to renew. If the proceeding was brought to review a determination, the judgment may annul or confirm the determination in whole or in part, or may direct or prohibit specified action by the respondent. Any restitution damages granted to the petitioner must be incidental to the relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or preceding suable in the supreme court against the same body or officer in its official capacity.

Under this provision, state courts may issue refunds for overpayment pursuant to an Article 78 proceeding, including monetary damages for other harm inflicted. *Hutchins v. Conciliation and Appeals Bd.*, 125 Misc.2d 809, 480 N.Y.S.2d 684 (Sup.Ct., N.Y. County 1984). Thus, in order to obtain a refund from the Village, plaintiff could have joined the Village in an Article 78 proceeding against the PASNY, or could have brought a separate proceeding against the Village.

Cases that have held that an Article 78 proceeding provides an inappropriate review of administrative rulemaking regarding prospective rates are inapposite. In these cases, no provision was made for notice and for a hearing. *See e.g., Bradley v. Whalen*, 395 N.Y.S.2d 530, 58 A.D.2d 664 (Sup.Ct.1977); *Broadacres Skilled Nursing Facility v. Ingraham*, 381 N.Y.S.2d 131, 51 A.D.2d 243 (Sup.Ct.1976). However, in the case at bar plaintiff was given notice of the 1986 rate revision and had an opportunity to be heard prior to approval of the new rate schedule.

The Court's view that an Article 78 proceeding would have provided an expeditious and adequate judicial review is supported by the Second Circuit's decision in *Campo v. New York City Employees' Retirement System and the City of New York*, 843 F.2d 96 (2d Cir.1988). In *Cam-*

---

**4.** The Court notes that recent case law in this Circuit supports defendants' position that plaintiff does not have a constitutionally protected property interest in the electric rate it pays. *See Rail Road Village Ass'n v. Denver Sewer Corp.*, 826 F.2d 1197 (2d Cir.1987).

*po*, the plaintiff brought a due process suit in federal court after a municipal retirement system refused to grant her a hearing prior to its decision to deny her survivor's benefits. The court held that since an Article 78 hearing was readily available to plaintiff upon timely demand, due process requirements were met. *Id.* at 100. The court reasoned:

> If the record before the Article 78 court demonstrates a lack of appropriate procedure, the Article 78 court has the authority and seemingly the duty to order the agency to conduct a proper hearing, regardless of the type of substantive claim is involved.

*Id.* at 101 (citations omitted). As in *Campo*, an Article 78 proceeding would have provided an appropriate state forum in the present case. Therefore, the Court will abstain under the *Burford* doctrine.

### III. THE JOHNSON ACT

Because this Court abstains under the *Burford* doctrine, it need not reach the interesting questions presented by the Johnson Act, 28 U.S.C. § 1342. The court notes, however, that the Johnson Act may deprive the court jurisdiction over the subject matter of this action. The Act provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a ratemaking body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>
> (2) The order does not interfere with interstate commerce; and,
>
> (3) The order has been made after reasonable notice and hearing; and,
>
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

Plaintiff argues that the Johnson Act applies only to bar a privately-owned utility from initiating an action in federal district court which seeks to upset adverse state proceedings. While the Court need not decide that question today, the Court notes that such a narrow interpretation does not serve the Act's remedial purpose. The Second Circuit has held that the goal of Congress in passing the Johnson Act "was to remove completely the subject of utility rates from the federal courts ... The abolition of jurisdiction in the federal courts ... must [be] read to reach broadly over all jurisdiction in rate cases...." *Miller v. New York State Public Service Comm'n*, 807 F.2d 28, 32–33 (2d Cir.1986). *See also Hanna Mining Co. v. Minnesota Power and Light Co.*, 739 F.2d 1368, 1370 (8th Cir.1984) ("The Act is to be broadly applied to keep challenges to orders affecting rates out of the federal courts."); *Tennyson v. Gas Service Co.*, 506 F.2d 1135, 1137 (10th Cir.1974) ("The evil sought to be remedied by the Johnson Act was the federal courts' interference with the states' own control of their public utility rates.")

Application of the Johnson Act also would require this Court to delve into the procedural aspects of the rate determinations of this case in order to address subsection (3) of the Act. This exercise, more appropriately the subject of an Article 78 proceeding in state court, is unnecessary in view of the Court's reliance on *Burford* abstention. Thus, while this Court abstains under the *Burford* doctrine, the Court notes that the Johnson Act may deprive the court of subject matter jurisdiction over this action.

### IV. CONCLUSION

For the foregoing reasons, the Court abstains from hearing this matter under the *Burford* abstention doctrine and dismisses the complaint.

SO ORDERED.