**Uldine KURI, on behalf of herself, her minor child, Angela, and all others similarly situated, et al., Plaintiffs-Appellants.**

v.

**Joel EDELMAN, Individually, and in his capacity as Director of the Illinois Department of Public Aid, Defendant-Appellee.**

No. 74-1093.

United States Court of Appeals, Seventh Circuit.

Feb. 11, 1974.

Robert E. Lehrer, Legal Asst. Foundation of Chicago, Chicago, Ill., Michael F. Lefkow, Chicago Ill., for plaintiffs-appellants.

William J. Scott, Atty. Gen., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, PELL, and STEVENS, Circuit Judges.

PELL, Circuit Judge.

The State of Illinois participates in the federally funded Aid To Families with Dependent Children (AFDC) program established under Title IV–A of

the Social Security Act, 42 U.S.C. § 601 et seq. The several plaintiffs filed their action in the district court on December 18, 1973, alleging that the defendant Joel Edelman, individually and in his capacity as Director of the Illinois Department of Public Aid, was implementing a program of suspending AFDC recipients from assistance in violation of their rights under 42 U.S.C. § 601 et seq. (Social Security Act, § 401 et seq.) and 42 U.S.C. § 1983 (Civil Rights Act), the Supremacy Clause, and the Fourteenth Amendment. Plaintiffs, on behalf of themselves and members of their class (recipients of assistance), sought declaratory and injunctive relief restraining implementation of the alleged illegal program. A hearing was held in the district court on January 30, 1974, at the conclusion of which the district court denied a preliminary injunction. This appeal followed. The plaintiffs filed a motion for an injunction pending appeal, which was denied by the district court, and the case is presently before this court on the motion filed here by plaintiffs for an injunction pending the appeal.

Plaintiffs contend that benefit checks will be withheld beginning February 1, 1974, from plaintiffs and members of their class, and that an injunction pending appeal is necessary to preserve the status quo and effective appellate review of the denial of the preliminary injunction by the district court.

As background for consideration of the present matter, on or about November 8, 1973, the defendant instituted a new Illinois Department of Public Aid income reporting program. The apparent reason for this program was because of continuing obligation on the defendant to provide the assistance program only to those eligible, which in turn involves the existence of need and dependency.

An IBM card DPA 43a, with an accompanying information notice, was mailed to the "grantee relative" of each Illinois family receiving AFDC benefits.

The card called for a report on income and the notice advised that the executed form must be returned to Springfield within 15 days to continue eligibility for Aid to Dependent Children.

As the matter is put by the defendant, the 43a form is not intended itself to be a guideline or instrument for eligibility for public assistance, "but is merely intended and used by the Department to be an informational tool so as to afford the defendant an opportunity to conform with federal guidelines which require the individual states to remove those people from the public assistance rolls who are ineligible for said assistance." Further, we note the assertion of the defendant, which does not appear to be denied, that the defendant's forms and program have been stated by the Department of Health, Education and Welfare not to be in conflict with federal regulations.

Suspension notices were mailed to the relatives if the Springfield Office of the Illinois Department did not receive the form 43a within the specified time period.

The suspension notice, which was a followup of the original request, reads as follows:

"This is to inform you that the Department of Public Aid, Springfield, will suspend your assistance/food stamp benefits under the Aid to Families with Dependent Children program because you failed to return the Income Report Form, DPA 43a, mailed to you on

"The Department of Public Aid will not take action to suspend your assistance/food stamp benefits if you will return Illinois Department of Public Aid Income Report Form DPA 43a in the enclosed envelope within 15 days of the date of this notice. If you have lost the card, complete the reverse side of this Notice and return this Notice.

"If you believe our intended action is wrong, you may, if you wish, meet with a representative of the County

Department/District Office to be further informed about our reasons for taking this action concerning your assistance/food stamp benefits. You will be given the opportunity to present any information or evidence which you believe might affect this decision. The meeting will be informal. If you wish, you may bring another person with you to assist you or to present information or evidence for you.

"Your right to appeal the Illinois Department of Public Aid's action, whether or not you meet with its representative, is not affected by your decision. At any time within 60 days after the date of this Notice, you have the right to appeal for a fair hearing to the Illinois Department of Public Aid. However, your assistance benefits may be continued at its present level if you appeal within 15 days of the date this Notice was mailed. Any County Department/District Office will provide you with the appeal form and will assist you in its completion if you wish."

It is asserted in the motion before the court that some 31,000 families are involved. However, it also appears in the file that some 86% of the recipients of the original notice have now complied with the requirement of furnishing the information on other income.[1] The principal thrust of the motion is that the form is vague and not understandable, which would seem to be belied by the substantial return, and that many of the recipients understand only the Spanish language and therefore were unable to respond.

The English language has been uniformly used at all times in connection with all correspondence and forms sent to welfare assistance recipients. The suspension notice form, while in English, makes it clear that informal procedures will be engaged in if the recipient calls at a local office for the purpose of restoring families to the receiving rolls if eligible.

While the complaint is made that many of the recipients only read and comprehend the Spanish language, there is no showing that this is the actual cause of recipients not returning the requested information. As far as we can tell from the record, the most significant factor for not returning the information may have been because the non-returners realized that other income available to them would preclude the payment of assistance. Nor is there any showing that there are not other language groups who may be unable to comprehend English. In sum, the matter of the reason for some recipients not complying with either of the two requests lies in the realm of conjecture.

As the defendant points out, the information requested is not vague but is similar to that the recipients had to furnish when they originally requested assistance under the program.

The plaintiffs rely heavily on a case which had not been decided when they filed their original complaint. Lau v. Nichols, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974).[2] We do not find *Lau* apposite to the problem here involved. That case was concerned with unequal educational opportunities under the Civil Rights Act of 1964 with particular reference to Chinese students in the San Francisco school system who do not speak English. The plaintiffs there did not necessarily seek a remedy that instructions be given in Chinese but only that as the school system presently operated they were denied a meaningful opportunity to participate in it. Petitioners only requested that the Board of Education be directed to apply its expertise

---

1. In an amended complaint plaintiffs proposed to file, it appears that the Department had mailed the 43a form to the heads of 220,000 families in Illinois. The estimated number of those recipients who have failed to report, as gleaned from pleadings and briefs of the plaintiffs, ranges from 16,000 to 38,000 families. The plaintiffs seem to have settled on 31,000 families in the present motion.

2. The district court in denying a preliminary injunction did give consideration to *Lau*.

to the problem and rectify the situation. The judgment below was reversed and remanded for the purpose of fashioning appropriate relief.

Here the ultimate purpose is to require notices to be sent out in the Spanish language without regard to the fact that there are presently informal procedures available in Spanish speaking areas which will enable those who cannot speak English nevertheless to comply.

Plaintiffs also cite Puerto Rican Organization for Political Action v. Kusper, 490 F.2d 575 (7th Cir. 1973). However, that case dealt not with Spanish speaking people per se but with citizens of the United States by virtue of their birth in Puerto Rico. These people were educated in Puerto Rican public schools where the language of instruction is Spanish. The matter of Puerto Ricans voting had been the subject of Congressional attention, 42 U.S.C. § 1973b(e)(2). The case is of no help to plaintiffs in the present case.

The case brought to our attention, which is closest to the present case, is Guerrero v. Carleson, 9 Cal.3d 808, 109 Cal.Rptr. 201, 512 P.2d 833 (Cal.1973), cert. denied, 414 U.S. 1137, 94 S.Ct. 883, 38 L.Ed.2d 762 (1974). In that case the California Supreme Court thoroughly analyzed the present problem and sustained the denial of a preliminary injunction in a situation comparable to the case at bar.

The relief requested in this court at the present time has been termed an extraordinary remedy. Belcher v. Birmingham Trust National Bank, 395 F.2d 685, 686 (5th Cir. 1968). One of the primary considerations for this court's present determinations must be whether the appellants have made a strong showing that they are likely to prevail on the merits of their appeal, which in this case is from the denial of a preliminary injunction. Miltenberger v. Chesapeake & Ohio Railway, 450 F.2d 971, 974 (4th Cir. 1971).

The procedures followed by the defendant present a strong case of advance notice with reasonable opportunity for recipients to avoid having their assistance terminated. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). We have no inclination to say that the state is not entitled to impose reasonable requirements on benefit recipients to determine whether they are on a continuing basis entitled to such benefits because of need and dependency. Indeed, even without receipt of a 43a form, recipients are under a statutory continuing duty to report changes in circumstances. Ill.Rev.Stat. ch. 23, § 11–19.

On the record before us, we do not find a basis for granting the extraordinary relief requested, the apparent effect of which would be to require as a mandatory matter the appellee Edelman to disburse some 30,000 checks under the AFDC, as to which there is no clear showing that there is legal entitlement in the proposed recipients.

Accordingly, the motion for injunction pending appeal is denied.

It is so ordered.