**Ana VIALEZ, Plaintiff,**

v.

**The NEW YORK CITY HOUSING AU-THORITY, Emanuel Popolizio, individually and in his capacity as Chairman of the New York City Housing Authority, Defendants.**

**No. 89 Civ. 8356 (DNE) (SEG).**

United States District Court,
S.D. New York.

June 18, 1991.

Bronx Legal Services (Jill Siegel, Judie Carasso and Lucy A. Billings, of counsel), Bronx, N.Y., for plaintiff.

Suzanne M. Lynn, General Counsel, New York City Housing Authority (Harry Stein-berg, of counsel), New York City, for defendants.

## OPINION

SHARON E. GRUBIN, United States Magistrate Judge:

Defendants seek summary judgment dismissing plaintiff's claims. The motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is a resident of the Castle Hill Houses, a housing project in the Bronx administered by the New York City Housing Authority. She lives in an apartment with her twenty-two-year-old daughter who is unemployed and supported by public assistance. According to plaintiff's affidavit, at all times relevant hereto, she was unable to speak and read English but able to both speak and read Spanish.[1] On or about November 10, 1988, plaintiff received a Housing Authority "Notice" of a tenancy termination hearing to be held before a hearing officer on December 8, 1988. Plaintiff contends that the Notice was written solely in English; defendants, however, contend that the one-page form was in English on one side of the paper and in Spanish on the other. On the bottom of the English side of the page are the words "VEA AL DORSO," meaning SEE BACK. The Notice reads, *inter alia:*

> At the hearing you may appear in person with such witnesses as you may desire, *AND BE REPRESENTED BY COUNSEL OR OTHER REPRESENTATIVES OF YOUR CHOICE.* If you desire legal representation and cannot afford a lawyer, it is suggested that you contact one of the agencies which provide free legal services. A copy of the procedures covering these proceedings is enclosed for your information.
>
> IT IS IMPORTANT THAT YOU REALIZE THAT THIS HEARING WILL BE THE ONLY OPPORTUNITY TO BE

1. Plaintiff's lack of facility with English is disputed by Lucille Hyatt, a housing assistant employed by the Housing Authority and assigned to oversee the Castle Hill Houses. Ms. Hyatt, who does not speak Spanish, has sworn by affidavit that she and plaintiff have had numerous conversations since 1985, all of which have been conducted in English without an interpreter. *See* Affidavit of Lucille Hyatt, Exhibit F to Affidavit of Harry Steinberg, at 4.

HEARD, THAT THE DETERMINATION BASED THEREON MAY RESULT IN YOUR EVICTION, AND THAT SUCH DETERMINATION MAY NOT BE CHALLENGED IN LANDLORD–TENANT COURT. ACCORDINGLY, IF YOU DESIRE TO CONTEST THE ABOVE CHARGES, YOU MUST REPLY TO THIS NOTICE AND APPEAR AT THE HEARING. OTHERWISE, YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO SUCH HEARING.

Attached to the notice of hearing was a "Specification of Charges" dated August 31, 1988. That form specified that the charge against plaintiff was "CHRONIC DELINQUENCY IN THE PAYMENT OF RENT, in that you have repeatedly failed to pay your rent when due." The document went on to list, for a nine-month period, the dates plaintiff's rent had been due and the later dates that the rent had been paid. It is undisputed that this Specification of Charges was written solely in English.

The parties dispute whether the Notice and the Specification of Charges were accompanied by a copy of the Housing Authority's "Termination of Tenancy Procedures." Defendants claim the procedures

form was attached, while plaintiff claims she did not receive the four-page form.[2]

Although plaintiff claims herein that she did not understand the Notice and Specification of Charges forms because they were in English, she appeared at the Housing Authority's offices as scheduled on December 8, 1988.[3] On that date the hearing was adjourned until January 17, 1989, when it was adjourned again to February 22, 1989 at which time it was held.[4] At the hearing plaintiff was provided with an interpreter and proceeded *pro se.* The charges were read to her in Spanish by the interpreter.[5] Plaintiff admitted that she paid her rent late, but claimed she did so because she lost one of her customers in her housekeeping business. Plaintiff had brought with her records of her income.

On February 28, 1989, the hearing officer rendered a decision terminating plaintiff's tenancy.[6] The Members of the Housing Authority unanimously confirmed the hearing officer's decision and sent a copy of their "Determination," dated March 15, 1989, to plaintiff.[7] Both the hearing officer's decision and the Authority's determination confirming it were in English only.

Plaintiff did not seek an appeal of the Housing Authority's determination. She apparently did nothing about her case until

---

**2.** The Notice form, as quoted above, refers to these procedures in reading, "A copy of the procedures covering these proceedings is enclosed for your information."

**3.** Plaintiff avers in a reply affidavit that she asked a friend to translate the forms for her. She says this friend told her the date, time and place of the hearing but did not tell her what the listed charges were. Vialez Reply Affidavit, ¶ 4.

**4.** The reasons for the adjournments and at whose request they were granted is unclear from the record.

**5.** Plaintiff claims that, despite the interpreter, she still did not understand the charges against her. Vialez Affidavit, ¶ 10.

**6.** The hearing officer summarized the evidence and his findings as follows:

Tenant admits the charges and they are deemed proven.

Ana Vializ [sic] testified in her own behalf that she has resided in the project for 14 years

and is employed as a homemaker. Her daughter does no work and is now pregnant. Tenant explained that she fell behind in her rent because her earnings suffered when she lost a client. She so informed the rent office on May 3, 1988. For four or five months she was left with only one client instead of two and was employed for only 20 hours a week. She could give no explanation for other late payments specified with the charges. Nor has she paid any rent since October.

Landlord stated that Tenant had still failed to provide proper documentation regarding her employment and current income.

There is no sufficient basis in the current record upon which to deny landlord its demanded disposition.

**7.** The one-sentence document read:

The New York City Housing Authority, in compliance with the Decision and Disposition made by the Hearing Officer, has determined that the tenant(s) is ineligible for continued occupancy on the ground of Chronic Delinquency In The Payment Of Rent and his [sic] tenancy shall therefore be terminated.

August 1989 when she received a holdover petition from the Bronx Housing Court that was issued as an automatic result of the Authority's determination. At that time she sought the help of Bronx Legal Services. With the help of counsel she applied to the Housing Authority in September 1989 to reopen the hearing, arguing that her circumstances had changed in that she had been paying her rent timely since July. The application to reopen was denied. Plaintiff did not seek an appeal of that denial or seek any other redress in the state courts. Rather, she brought the instant action under 42 U.S.C. § 1983 claiming violation of her federal civil rights. Defendants have agreed to stay eviction proceedings pending this action.[8]

Plaintiff pleads the following eight claims herein: (1) defendants' failure to recertify and adjust plaintiff's rent when notified by plaintiff of a change in her income violated her due process rights under the fourteenth amendment to the Constitution, in that defendants failed to follow their own regulations by timely lowering her rent; (2) defendants' failure to recertify and adjust plaintiff's rent violated 42 U.S.C. § 1437a, known as the Brooke Amendment to the United States Housing Act of 1937; (3) defendants' failure to provide plaintiff with notice of the charges against her or any notice in Spanish violated her fourteenth amendment right to due process; (4) defendants' failure to provide plaintiff with notice of the charges against her in Spanish violated 42 U.S.C. § 2000d *et seq.*, 42 U.S.C. § 3604 and 24 C.F.R. § 1.4; (5) defendants' failure to provide plaintiff with the decision of the hearing officer in Spanish violated her fourteenth amendment right to due process; (6) defendants' failure to provide plaintiff with the decision of the hearing officer in Spanish violated 42 U.S.C. § 2000d *et seq.*, 42 U.S.C. § 3604 and 24 C.F.R. § 1.4; (7) defendants' failure to provide plaintiff with notice of her right to appeal the hearing officer's decision violated her fourteenth amendment right to

due process; (8) the hearing officer's failure to conduct a fair hearing, in that he did not fix the issues in the proceeding; examine witnesses and direct witnesses to testify; elicit and develop all relevant evidence; develop a complete record; and determine all relevant issues, violated 24 C.F.R. § 2.63 and the due process clauses of the United States and New York Constitutions. Plaintiff seeks declaratory and injunctive relief. She also seeks reimbursement of alleged rent overcharges, as well as attorneys' fees and expenses of this action.

## DISCUSSION

### I.

Under Rule 56(c) of the Federal Rules of Civil Procedure a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming foward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion," *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398

---

8. The limitations period for bringing an action under Article 78 of the New York Civil Practice Law and Rules is four months from the date of the determination. N.Y.Civ.Prac.L. & R. § 217

(McKinney 1988). Plaintiff's time to appeal the Housing Authority's determination ended July 15, 1989, prior to her receipt of the holdover petition.

U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative, *id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.,* but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574,

587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola,* 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).

## II.

Recovery under 42 U.S.C. § 1983 is premised upon a showing that the defendants have denied the plaintiff a federal constitutional or statutory right under color of state law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). The touchstones of due process are notice and an opportunity to be heard. *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Rockland Medilabs, Inc. v. Perales,* 719 F.Supp. 1191, 1199 (S.D.N.Y.1989). *See also Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Patterson v. Coughlin,* 761 F.2d at 890.

However, if a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983. *Marino v. Ameruso,* 837 F.2d 45 (2d Cir. 1988); *Tall v. Town of Cortlandt,* 709 F.Supp. 401, 408 (S.D.N.Y.1989). Moreover, an unauthorized property deprivation under color of state law does not give rise to a § 1983 constitutional claim where the state provides a post-deprivation remedy adequate to meet the due process requirements of the Constitution. *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981); *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Barrett v. United States,* 651 F.Supp. 615, 620 (S.D.N.Y.1986). Although one need not exhaust state remedies before bringing a § 1983 action claiming a violation of due process, *see Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), one must nevertheless

show that state procedural remedies are inadequate. *See Marino v. Ameruso,* 837 F.2d at 47. Thus, where a plaintiff alleges deprivation of property in violation of the due process clause, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not the plaintiff took advantage of the state procedure. *See Rosa R. v. Connelly,* 889 F.2d 435, 438–89 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3225, 110 L.Ed.2d 671 (1990); *Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 101 (2d Cir.), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 888 (2d Cir.1987); *Giglio v. Dunn,* 732 F.2d 1133, 1135 (2d Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984); *Menon v. Utica Estates Co.,* No. 86 Civ. 7613 (CSH), slip op. at 4 (S.D.N.Y. Nov. 2, 1989) (1989 WL 135268) (1989 U.S.Dist. Lexis 13126); *Drogan v. Ward,* 675 F.Supp. 832, 837 (S.D.N.Y.1987). Indeed, "[i]f the state provides an adequate alternative remedy the loss of property is not without due process of law. The existence of the alternative remedy supplies the 'due process' and there is no 'deprivation' of a property interest by the state." *Bates v. N.Y.C. Transit Authority,* 721 F.Supp. 1577, 1581 (E.D.N.Y.1989), citing *Parratt v. Taylor,* 451 U.S. at 543–44, 101 S.Ct. at 1916–17; *see also Katz v. Klehammer,* 902 F.2d 204, 207 (2d Cir.1990); *Campo v. New York City Employees' Retirement System,* 843 F.2d at 100–03; *Tall v. Town of Cortlandt,* 709 F.Supp. at 408; *Drogan v. Ward,* 675 F.Supp. at 837.

▮▮▮▮ It is undisputed that a proceeding under N.Y.Civ.Prac.L. & R. § 7803 (McKinney 1981) ("Article 78") is available to obtain relief in the state courts from an unconstitutional or otherwise unlawful deter-

mination of an administrative agency like that alleged of the Housing Authority herein.[9] See *Katz v. Klehammer,* 902 F.2d at 207; *Campo v. New York City Employees' Retirement System,* 843 F.2d at 101; *Giglio v. Dunn,* 732 F.2d at 1135; *Liotta v. Rent Guidelines Board,* 547 F.Supp. 800, 802 (S.D.N.Y.1982); *see also Mangine v. New York City Housing Authority,* 140 A.D.2d 523, 528 N.Y.S.2d 416 (2d Dep't. 1988) (review of determination terminating tenancy in housing project); *Chase v. Binghamton Housing Authority,* 91 A.D.2d 1147, 458 N.Y.S.2d 960 (3d Dep't.1983) (same). In *Giglio v. Dunn, supra,* the plaintiff claimed that he had been denied due process when he was coerced to resign from his position as a high school principal without a "precoercion hearing." The Second Circuit upheld the district court's conclusion that an Article 78 proceeding after the resignation would have been "adequate to satisfy the requisites of due process" and explained:

> Article 78 of N.Y.Civ.Prac.Law, which is an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, made available to Giglio both a hearing and a means of redress.... For reasons best known to his attorney, appellant abjured this readily available remedy, preferring to base his claim on an alleged due process right to a precoercion hearing....
>
> \* \* \* \* \* \*
>
> Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity.

732 F.2d at 1134–35.

In *Alfaro Motors, Inc. v. Ward, supra,* a tow car company brought a § 1983 action against the City of New York, alleging that the city's failure to give a prompt adminis-

---

**9.** Section 7803 provides that the following questions may be raised in an Article 78 proceeding:

1. whether the body or officer failed to perform a duty enjoined upon it by law; or

\* \* \* \* \* \*

3. whether a determination was made in violation of lawful procedure, was affected by

an error of law or was arbitrary and capricious or an abuse of discretion ...

4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

trative hearing to review the denial of plaintiff's application for tow car medallions deprived it of due process. The Second Circuit held otherwise:

> ... [I]t cannot be said that appellants were deprived of property without due process of law. In reviewing state administrative proceedings, it is the function of the federal courts to determine only whether the state has provided adequate avenues of redress to review and remedy arbitrary action.... Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was arbitrary and capricious ... [O]ur inquiry is satisfied by noting that adequate state procedures, sufficient to protect appellants' claimed property interest, such as a New York State Article 78 proceeding ... were available to appellants.

814 F.2d at 888 (citations omitted).

In a decision one year later, *Campo v. New York City Employees' Retirement System, supra,* the Second Circuit reaffirmed its above conclusions when the widow of a New York City employee was denied a survivor's benefit under her husband's pension by the New York City Employees' Retirement System ("NYCERS"). The agency had denied the benefit without any hearing apparently because the New York City Administrative Code does not require one. The widow brought a § 1983 action in this court claiming that, by failing to grant her a hearing, NYCERS had deprived her of property without due process of law in violation of the fourteenth amendment. The Second Circuit affirmed the dismissal of the action, explaining that the plaintiff's challenge to the adequacy of the procedures regularly used by NYCERS was something she could have argued to an Article 78 court:

> In *Solnick v. Whalen,* 49 N.Y.2d 224, 401 N.E.2d 190, 425 N.Y.S.2d 68 (1980), the Court of Appeals of New York noted that an Article 78 proceeding was available to challenge procedures used to revise Medicaid reimbursement rates. In *Solnick,* Judge Jones wrote that such a challenge is "available as a question for review in such a proceeding under the third question authorized by CPLR 7803—whether the 'determination was made in violation of lawful procedure [or] was affected by an error of law'." ... If the record before the Article 78 court demonstrates a lack of appropriate procedure, the Article 78 court has the authority and seemingly the duty to order the agency to conduct a proper hearing, regardless of the type of substantive claim involved.... Thus, if Mrs. Campo had timely sought Article 78 review, a New York court would have had the authority to remand this case to NYCERS for an appropriate administrative proceeding.

843 F.2d at 101.

*Liotta v. Rent Guidelines Board for the City of New York, supra,* was an action in this court seeking to enjoin enforcement of an order of the Rent Guidelines Board for the City of New York. The plaintiffs contended that the meeting of the board at which the order was adopted was so dominated by a loud, angry and threatening audience that no rational deliberations on the order could have been had. Judge Conner found no claim had been stated:

> Plaintiffs' action cannot be sustained in this Court. Assuming without deciding that plaintiffs have satisfied the other requirements for stating a claim under § 1983, the Article 78 proceedings that exist under this regulatory framework satisfy the requirements of procedural due process. Article 78 proceedings provide for speedy review of administrative action and thus serve as an integral part of the regulatory process, rather than as a source of separate judicial review. Plaintiffs cannot complain that due process has been denied them when they have rejected the state procedure that is available to them for correcting the alleged procedural deficiency. If due process were denied every time an agency official made a decision under questionable circumstances, any losing party to the decision could attack it indirectly by suing the agency under § 1983.... Plaintiffs cannot manufacture a § 1983 claim by pointing to the allegedly defective meeting while ignoring that part of

the regulatory process that serves to redress administrative error. Rather, in considering whether defendants have failed to afford plaintiffs due process in connection with the rent guidelines, the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law.

547 F.Supp. at 801–02. In a later recent case, *Menon v. Utica Estates Co.,* slip op., No. 86 Civ. 7613 (CSH) (S.D.N.Y. Nov. 2, 1989) (1989 WL 135268) (1989 U.S.Dist. Lexis 13126), Judge Haight in another context reached the same conclusion:

> It is not the proper function of the federal district courts, courts of limited jurisdiction, to review all state judicial or administrative proceedings, even if a plaintiff's federal claims are clothed in constitutional due process language. Where a plaintiff alleges deprivation of property by state authorities in violation of the Due Process Clause, the federal court's inquiry is limited to determining "whether the state has provided adequate avenues of redress to review and remedy arbitrary action." ... In the case at bar, appeals and proceedings under Article 78, N.Y. CPLR, were available to plaintiff. In these circumstances, plaintiff has no viable claim under the federal civil rights statutes.

Slip op. at 4 (citations omitted).

█ Plaintiff here maintains that the availability of review in an Article 78 court should not preclude this action because she was unaware that she had that opportunity for review. Of all the documents sent to plaintiff by the Housing Authority in connection with her proceeding, it is only the "Termination of Tenancy Procedures"— which was to accompany the original "Notice" and "Specification of Charges"—that informs a tenant of the availability of review of an adverse administrative decision.[10] As mentioned earlier, according to plaintiff, the Procedures leaflet was not included with the Notice and Specification of Charges she received. Accepting that representation as true, it is, nevertheless, irrelevant because plaintiff also states that, as the Procedures are only printed in English, she could not have understood them and, moreover, that the relevant language in the Procedures (set forth in footnote 10, *supra* ) is so incomprehensible to a layperson that she would not have understood it in Spanish. Defendants note that the Notice reads, "A copy of the procedures covering these proceedings is enclosed for your information," and assert that if plaintiff did not receive the enclosure she should have asked for it. Plaintiff counters by asserting that, because the Notice was in English only, she could not read it to learn that the procedures were supposed to have been enclosed. However, she also maintains that the Notice affirmatively *misled* her to believe that she had no right to appeal by the following language:

> IT IS IMPORTANT THAT YOU REALIZE THAT THIS HEARING WILL BE THE ONLY OPPORTUNITY TO BE HEARD, THAT THE DETERMINATION BASED THEREON MAY RESULT IN YOUR EVICTION, AND THAT SUCH DETERMINATION MAY NOT BE CHALLENGED IN THE LANDLORD–TENANT COURT.

Plaintiff's position in this regard appears disingenuous and casts further doubt on her claim of having been unable to read English; surely, if she were able to read this one portion of the Notice which allegedly misled her, she should have been able to read other portions of both this document and the other documents.

In any event, based upon the authorities discussed earlier, it is apparent that the first question to be resolved herein is whether plaintiff had a constitutional right to receive notice of her right to appeal the Housing Authority's determination through

---

**10.** Paragraph 12 of the Procedures reads:

12. A decision by the Hearing Officer or a determination by the members of the Authority in favor of the Authority or which denies the relief requested by the tenant, in whole or in part, SHALL CONSTITUTE A WAIVER of the rights of the tenant to a trial *de novo* or judicial review in any judicial proceedings, except a judicial proceeding to review said decision or determination pursuant to Article 78 of the New York State Civil Practice Law and Rules.

an Article 78 review. All her claims of the unconstitutionality of her hearing and of the circumstances surrounding that hearing rise or fall upon the answer to this question, because it is quite clear that these claims could and should have been raised in an Article 78 proceeding.[11] Plaintiff avers, however, that because she was never adequately informed by defendants that she had the opportunity to appeal, she remained unaware of it until after the time limitation period had run (*see* footnote 8, *supra*). If plaintiff had a constitutional right to be told of her opportunity for review, her due process claims herein remain viable; if, however, she were not entitled to notice of a right to appeal, her failure to raise her claims to the state courts through Article 78 remains unexcused and this court cannot entertain such claims in this action.

Research reveals that, faced with the question, courts have uniformly found a plaintiff claiming a due process entitlement to specific notice of the right to appeal unable to demonstrate a legally sound argument. In *Bennett v. Director, Office of Workers' Compensation Programs*, 717 F.2d 1167 (7th Cir.1983), for example, a petitioner sought review of a decision of the United States Department of Labor Benefits Review Board ("BRB") which dismissed as untimely his appeal of an administrative law judge's decision denying him benefits under the Black Lung Benefits Act. Under the Department of Labor's regulations, a claimant had thirty days within which to appeal. Petitioner argued that his failure to have appealed within that time period should be excused because he did not receive notice of his appeal rights, and, therefore, he was not aware of the time limitation. The Seventh Circuit rejected the contention:

Although this regulation does not require the ALJ's decision to include a notice of appeal rights, the petitioner argues that such a notice *should* be included, based on general principles of fairness. He points out that black lung claimants commonly have little education and cannot reasonably be expected to be aware of the contents of either the Federal Register or the Code of Federal Regulations....

We recognize that it may be difficult for an unrepresented black lung claimant to understand his appeal rights. However, the petitioner has cited no authority, and we have found none, that would permit the time limits for appeal to the BRB to be waived in cases like the one at bar.

It has long been established that publication of regulations in the Federal Register has the legal effect of constructive notice of their contents to all who are affected thereby.... The United States Supreme Court has stated that such regulations are binding "regardless of actual knowledge of what is in the Regulations or of the hardship resulting from ignorant innocence."

717 F.2d at 1169 (citations omitted). Similarly, in *Childress v. Small Business Administration*, 825 F.2d 1550 (11th Cir. 1987), the Eleventh Circuit, in a case involving cancellation of a loan by the Farmers Home Administration, stated (in dicta):

Under the regulations, the Childresses had a right to appeal this decision and the federal parties did not advise them of this right, either orally or in writing.

We know of no case, however, which holds that minimum due process requires that the parties not only be given a notice and hearing but also that they be specifically advised of their right to ap-

---

11. *See, e.g., Liotta v. Rent Guidelines Board for the City of New York, supra:*

New York Civil Practice Law and Rules § 7803 provides the mechanism for challenging a specific decision of a state administrative agency. Section 7803(3) states, *inter alia,* that the litigant may raise the question of whether a determination was made in violation of lawful procedure or was arbitrary or capricious or an abuse of discretion. The state has provided Article 78 proceedings as part of the administrative procedure in order to accommodate challenges to specific agency actions. Plaintiffs' claim is such a challenge. Therefore, plaintiffs cannot be allowed to allege that defendant had denied them due process when they have not availed themselves of the existing remedy.
547 F.Supp. at 802–03.

peal. In any event, we need not hold that minimum due process does not include such a right to notice but only recognize, as we must [to determine the issue of qualified immunity] that such a right has not been clearly established as a constitutional minimum.

825 F.2d at 1553. *See also Arzanipour v. I.N.S.*, 866 F.2d 743 (5th Cir.), *cert. denied*, 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 30 (1989); *Culbreath v. Block*, 799 F.2d 1248, 1250 (8th Cir.1986); *Hunley v. Director, Office of Workers' Compensation Programs*, 751 F.2d 385 (6th Cir.1984).

Plaintiff relies on *Escalera v. New York City Housing Authority*, 425 F.2d 853, 866 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), in contending that "an Article 78 proceeding would not be a substitute for fair procedures in the [public housing] decision in the first instance." But those Housing Authority procedures which plaintiff here was indisputably afforded appear to have been established in large part as a result of the *Escalera* decision. *Escalera* involved eviction and penalty proceedings instituted by the Housing Authority as a result of various alleged acts by the plaintiff tenants. At the time of the case, tenancies were being terminated without the procedural safeguards we take for granted today. Thus, tenants were not provided with notice of the charges, opportunity for confrontation and cross-examination of witnesses, an impartial hearing officer, a transcript of the hearing or a written decision. It was these and other basic inadequacies in the administrative proceeding which the Second Circuit ruled an Article 78 proceeding would not cure. The procedures with which plaintiff here was provided included those designed to remedy the inadequacies found in *Escalera*.[12] *See Simmons v. Popolizio*, 160 A.D.2d 368, 553 N.Y.S.2d 422 (1st Dep't), *appeal granted*, 76 N.Y.2d 712,

563 N.Y.S.2d 768, 565 N.E.2d 517 (1990). The *Escalera* court did not require the type of relief sought by plaintiff here. Indeed, the Second Circuit, eighteen years after it decided *Escalera*, decided *Campo v. New York City Employees' Retirement System, supra*, which, as discussed earlier, holds that the mere availability of Article 78 proceedings is sufficient to satisfy due process requirements lacking at the administrative stage. In so holding, the court distinguished its own decision in *Escalera*:

> ... *Escalera* focused on pre-deprivation procedures and did not discuss whether the Article 78 court could have been asked to remand the case to the [Housing Authority] for an administrative proceeding in a post-denial context to be conducted in full accord with procedural due process standards, and therefore does not affect the outcome of this case.
>
> In the light of those authorities we hold that the State of New York, through Article 78, offered to Mrs. Campo a due process hearing at a meaningful time and in a meaningful manner.

843 F.2d at 102–03 (footnote omitted).

Plaintiff also relies on *Ellender v. Schweiker*, 575 F.Supp. 590 (S.D.N.Y.1983), the only decision which appears to lend a small bit of support to plaintiff's claim. That case, however, involved far different circumstances from this one. *Ellender* was a class action in which the defendant, the Secretary of the Department of Health and Human Services, had sought to recover overpayments of Supplemental Security Income (SSI) that had mistakenly been made to plaintiffs. Plaintiffs were all persons who were currently receiving old-age, survivors and disability income ("OASDI") from defendant and who had also received alleged SSI overpayments. Defendant, in his attempt to recover the SSI overpayments, had sent to some of these persons a notice requesting repayment of the

---

**12.** The "Procedures" leaflet (which plaintiff alleges she did not receive) states:

The following procedures apply to termination of tenancy by the New York City Housing Authority to conform with the opinion of the United States Court of Appeals for the Second Circuit and the action of the United States District Court for the Southern District of New York in the case of *Escalera, et al. v. New York City Housing Authority*, 425 F.2d 853, certiorari denied, 400 U.S. 853 [91 S.Ct. 54, 27 L.Ed.2d 91] (1970), consent decree on remand docketed March 25, 1971, 67 Civ. 4307 (S.D.N.Y.1971, D.J. Mansfield)....

overpayment, permitting the recipient to authorize withholding of OASDI benefits to repay the SSI overpayment and informing the recipient of his or her rights to waiver and appeal. This notice was followed by a second one which, for many of the recipients, was the first and only one received and which merely recited the amount of overpayment due, asked for its refund immediately and explained that if full payment could not be made at that time the balance could be withheld from the recipient's OASDI benefits. This notice did not state that recipients could have a hearing and that the alleged amount of overpayment was subject to waiver and appeal. For those who received only this notice, there was simply an amount allegedly owed, and, although there had been no hearing, a demand for repayment. It left recipients with the understanding that they had a choice only of either repaying in full at that time or authorizing withholding from OASDI. Judge Cooper held that these recipients had been misled and, without being afforded a hearing, they were denied any opportunity to present their objections or otherwise challenge the Secretary's determinations. Thus, it was in light of the lack of any hearing in the first instance that the court held that, without notice of waiver and appeal rights, "plaintiffs would be denied all opportunity to present their objections." 575 F.Supp. at 603. The situation here, of course, is quite different. Plaintiff admits receiving notice of her hearing and of being afforded an interpreter who, the record shows, explained the charges against her in Spanish and translated the full hearing. It is undisputed that the hearing officer apprised her of her rights to counsel, to testify on her own behalf, to call witnesses and to present evidence.

Similarly, in *McNair v. New York City Housing Authority*, 613 F.Supp. 910 (S.D.N.Y.1985), also cited by plaintiff, the plaintiffs had been denied an entitlement simply on the basis of an interview that had none of the procedural safeguards attendant to hearings, such as the rights to counsel, confrontation and cross-examination. It was, again, in the absence of a hearing that the court held plaintiffs should have been informed that there existed a means for review. Moreover, the defendant in *McNair* was found to have affirmatively misled plaintiffs about their right to a hearing. In addition, this case was decided as a matter of *statutory*, not constitutional, law (United States Housing Act, 42 U.S.C. § 1437d(c)(3)).

Plaintiff, in attempting to distinguish some of the cases relied on by the defendants, argues that "the fact that Ms. Vialez is indigent and does not read or understand English, unquestionably requires different conclusions as to whether due process principles were violated." Letter from plaintiff's counsel dated April 18, 1990 at 6–7. However, plaintiff has not provided any relevant authority for her proposition. To the contrary, the cases hold that in similar situations the Constitution does *not* require the government to take into account a person's language or education in determining what process is due. For example, in *Commonwealth v. Olivo*, 369 Mass. 62, 337 N.E.2d 904 (1975), the defendants, who were unable to read English, had failed to comply with condemnation notices. The Massachusetts Supreme Judicial Court held that such English-only notices violated neither due process nor equal protection and that, upon receipt of the notices, defendants were on "inquiry notice" to find out their meaning:

> ... [W]e believe that in-hand service of an official order by a constable was sufficient to put a reasonable person on notice that the order was important and, if not understood, required translation. Moreover, such translation would have provided the defendants with actual knowledge of the importance of the order and of their obligations thereunder. Finally, the nature of the defendants' disability, here the inability to read English, was not such as would render them incapable of understanding the need for further inquiry. Thus, we are of the opinion that the notice received by the defendants was constitutionally sufficient, and that bilingual notice was not constitutionally required.

337 N.E.2d at 909–10.[13]  *See also Soberal–Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984) ("A rule placing the burden of diligence and further inquiry on the part of a non-English-speaking individual served in this country with a notice in English does not violate any principle of due process."); *Alfonso v. Board of Review*, 89 N.J. 41, 444 A.2d 1075, 1077, *appeal dismissed and cert. denied*, 459 U.S. 806, 103 S.Ct. 30, 74 L.Ed.2d 45 (1982) ("The courts have recognized, whether explicitly or implicitly, that in an English-speaking country, requirements of 'reasonable notice' are satisfied when the notice is given in English."); *Hernandez v. Dep't of Labor*, 83 Ill.2d 512, 48 Ill.Dec. 232, 235–36, 416 N.E.2d 263, 266–67 (1981) (unemployment insurance termination notices written only in English held constitutionally adequate, and, therefore, failure to seek timely review of termination was fatal to claim); *Dalomba v. Director of Division of Employment Security*, 369 Mass. 92, 337 N.E.2d 687, 689–91 (1975) (same); *Guerrero v. Carleson*, 9 Cal.3d 808, 109 Cal.Rptr. 201, 203–06, 512 P.2d 833, 835–38 (1973), *cert. denied sub nom. Guerrero v. Swoap*, 414 U.S. 1137, 94 S.Ct. 883, 38 L.Ed.2d 762 (1974) (welfare termination notices in English only held constitutional).  *See also Kuri v. Edelman*, 491 F.2d 684 (7th Cir. 1974); *Carmona v. Sheffield*, 475 F.2d 738 (9th Cir.1973); *Nuez v. Diaz*, 101 Misc.2d 399, 421 N.Y.S.2d 770, 773–74 (Sup.Ct. Monroe Co.1979) (cases collected).

To accept plaintiff's contention that as a constitutional—rather than legislative—matter, plaintiff has a right to have certain documents written in Spanish would place an insurmountable and unjustified burden on the Housing Authority.  The Housing Authority, which singly administers the largest number of public apartments in this country, would have to keep track of what language each of its tenants speaks and send correspondence specially translated into each language.  In each case, the Authority would have to ensure that each tenant understood the notices received, despite language disabilities, physical handicaps like blindness and mental handicaps. If such were to be deemed a constitutional requirement, would tenants who were illiterate be entitled to oral notice?  Due process can only require that which is reasonable in the circumstances.  In the circumstances plaintiff found herself—upon receipt of the original Notice of Hearing and Specification of Charges, or at the time of her hearing when the interpreter read the charges to her and told her of her right to counsel, or upon receipt of the hearing officer's decision, or upon receipt of the Authority's final determination—it is not unreasonable to expect her, if she cannot read or understand, to seek out someone to translate the documents for her or to tell her what they mean.[14]  However, it was not until she received the holdover petition

---

**13.** Under New York law:

> One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge which the proper inquiry would disclose....  It is a general rule that if a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which, to the mind of a man of ordinary prudence, begets inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed.

*Kalb v. Chemical Bank New York Trust Co.*, 62 Misc.2d 458, 309 N.Y.S.2d 502, 507 (N.Y.C.Civ. Ct.1969), *rev'd on other grounds*, 64 Misc.2d 824, 316 N.Y.S.2d 381 (App.Term.1970).  *See also*

*Woods v. Barnes*, 84 F.Supp. 155, 158 (N.D.N.Y. 1949) ("Whatever is sufficient to put a party on inquiry amounts to 'notice,' provided the inquiry becomes a duty and would lead to knowledge of the requisite facts by the exercise of ordinary diligence.")

**14.** Plaintiff explains that she did not seek help from her then nineteen-year-old daughter because her daughter does not speak *Spanish* well:

> When I first got the notice of the hearing, I decided not to ask my twenty-two year old daughter to translate the notice.  I have previously asked my daughter to translate for me, but I know that her ability to speak English is limited and she frequently gives me incorrect interpretations.  I therefore asked a friend whom I thought might be able to translate better, but I guess I was mistaken.

Vialez Reply Affidavit, ¶ 3.

and notice to vacate from Housing Court (which was also in English only) that she sought help from Bronx Legal Services. As the court stated in *Commonwealth v. Olivo, supra:*

"English is the language of this country. This conception is fundamental in the administration of all public affairs." ... This is not an officially multilingual country, and notification of official matters in the sole official language of both this nation and this Commonwealth [Massachusetts] is patently reasonable.

337 N.E.2d at 911 (citations omitted).

To be sure, those in this country for whom English is not a native tongue can face intense problems just in the daily chores of living, and for those also without the good fortune of a good education the pressures are far greater. Yet, it is not the role of the courts to resolve this societal situation by a strained, at best, construction of the Constitution. The New Jersey Supreme Court gave an apt description of numerous decisions in which courts have found the Constitution to require no more than English-only language:

These holdings are not born of any lack of appreciation for the difficulties that non-English speaking people encounter in our society. Those difficulties are many and burdensome. It is doubtless true, especially in areas where there is a high density of non-English speaking population, that administrative and humanitarian considerations would warrant the use of bilingual documents.... But these salutary considerations by no means translate into a requirement, under procedural due process concepts, that the State adopt a policy mandating the use of such documents. The decision to provide translation, encompassing as it does the determination of when a translation should be provided, and to whom, and in what language, is one that is best left to those branches of government that can better assess the changing needs and demands of both the non-English speaking population and the government agencies that provide the translation.

*Alfonso v. Board of Review,* 444 A.2d at 1077. The Massachusetts Supreme Judicial Court expressed the same idea as follows:

Whether the agency sending the notice knows, or has reason to know, that the recipient is not literate in English does not alter the rule as stated above. The law does not place a burden on government agencies to ascertain whether the recipient is able to read English, nor does it require that they communicate with those not literate in English in anything but the nation's official language, notwithstanding actual or constructive knowledge of such language deficiency. It might be appropriate and advisable for government agencies to give bilingual notice.... However, if such a burden on governmental function is desirable, it should be done by legislative action and with carefully delineated rules and guidelines. It is not appropriate for this court to enter so difficult and obscure an area without legislative mandate.

*Commonwealth v. Olivo,* 337 N.E.2d at 910 n. 6. *See also Soberal–Perez v. Heckler,* 717 F.2d at 43 ("Plaintiffs argue that notice in English to those with limited English abilities is a 'mere gesture [which] is not due process'.... We do not agree.").

In sum, New York does provide an adequate avenue for appeal of a Housing Authority decision, and due process does not require that plaintiff have been sent notice of that opportunity to appeal. However, it might be noted that even if we were to hold that such a constitutional requirement exists, it would be unavailing to plaintiff in this case because the alleged failure of the Housing Authority to have sent her the Procedures which do advise of the right to appeal—even though in English only and in terminology difficult for some to understand—was a random, unauthorized act and plaintiff has made no showing that New York does not provide her with adequate remedies to have this alleged failure rectified. *See Parratt v. Taylor,* 451 U.S. at 541, 101 S.Ct. at 1916.

The New York State legislature or the Housing Authority perhaps could have devised more elaborate procedures which

**122**

would have had the effect of forestalling the situation in which plaintiff currently finds herself. However, this court should not legislate. As plaintiff has failed to demonstrate the existence of any federal constitutional claims, the First, Third, Fifth, Seventh and Eighth Claims of the complaint shall be dismissed.

### III.

■ The next issue before the court is whether Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., required the original notice of the charges against plaintiff and the decision of the hearing officer to have been in Spanish. Section 2000d provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Title VI proscribes only those classifications prohibited by the fourteenth amendment's equal protection clause or the right to equal protection incorporated into the fifth amendment by its due process clause. *Regents of the University of California v. Bakke*, 438 U.S. 265, 287, 98 S.Ct. 2733, 2746, 57 L.Ed.2d 750 (1978) (Powell, J., announcing judgment of the Court); *id.* at 325, 328, 98 S.Ct. at 2766, 2767 (Brennan, White, Marshall and Blackmun, JJ., concurring in the judgment in part and dissenting in part); *Williamsburg Fair Housing Committee v. New York City Housing Authority*, 493 F.Supp. 1225, 1244 n. 21 (S.D.N.Y.1980); *Bryan v. Koch*, 492 F.Supp. 212, 230–31 (S.D.N.Y.), *aff'd*, 627 F.2d 612 (2d Cir.1980); *see Parent Ass'n of Andrew Jackson High School v. Ambach*, 598 F.2d 705, 716 (2d Cir.1979). Where governmental action disadvantages a suspect class or burdens a fundamental right, the conduct must be strictly scrutinized and will be upheld only if the government can establish a compelling justification for the action. *See, e.g., Regents of the University of California v. Bakke*, 438 U.S. at 299, 98 S.Ct. at 2752 (Powell, J., announc-

ing judgment of the Court); *San Antonio School District v. Rodriguez*, 411 U.S. 1, 16–17, 93 S.Ct. 1278, 1287–88, 36 L.Ed.2d 16 (1973); *Soberal–Perez v. Heckler*, 717 F.2d at 41. Where a suspect class or a fundamental right is not implicated, the challenged action need only be rationally related to a legitimate governmental purpose. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Soberal–Perez v. Heckler*, 717 F.2d at 41. While entitlement to low-income housing is not a fundamental right, *Acevedo v. Nassau County*, 500 F.2d 1078, 1080–81 (2d Cir. 1974), quoting *Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972); *Schmidt v. Boston Housing Authority*, 505 F.Supp. 988, 996 (D.Mass. 1981), Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis. *Keyes v. School District No. 1*, 413 U.S. 189, 197, 93 S.Ct. 2686, 2691, 37 L.Ed.2d 548 (1973); *Hernandez v. Texas*, 347 U.S. 475, 477–79, 74 S.Ct. 667, 669–671, 98 L.Ed. 866 (1954); *Soberal–Perez v. Heckler*, 717 F.2d at 41. However, the Housing Authority's failure to provide its documents to plaintiff in Spanish does not implicate a protected class. As the Second Circuit has stated:

[T]he ... failure to provide forms and services in the Spanish language does not on its face make any classification with respect to Hispanics as an ethnic group. A classification is implicitly made, but it is on the basis of language, *i.e.*, English-speaking versus non-English-speaking individuals, and not on the basis of race, religion or national origin. *Language, by itself, does not identify members of a suspect class. Frontera v. Sindell*, 522 F.2d 1215, 1219–20 (6th Cir.1975); *Carmona v. Sheffield*, 475 F.2d 738, 739 (9th Cir.1973).

*Soberal–Perez v. Heckler*, 717 F.2d at 41 (emphasis added). *See also Garcia v. Gloor*, 618 F.2d 264, 271 (5th Cir.1980) (employer's English-only rule does not violate Title VII or 42 U.S.C. § 1981), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Guadalupe Organization, Inc., v. Tempe Elementary School District No. 3,*

587 F.2d 1022, 1027 (9th Cir.1978) (no right to bilingual education); *Frontera v. Sindell,* 522 F.2d 1215, 1218 (6th Cir.1975) (English-only Civil Service exams do not violate Hispanic individuals' equal protection rights).

*Soberal–Perez v. Heckler* was an action on behalf of Hispanic individuals with limited abilities in the English language who had been denied Social Security benefits by the Secretary of Health and Human Services. They claimed that the denial was the result of the Secretary's failure to provide the forms and instructions in Spanish. They claimed relief under Title VI as well as under the due process and equal protection clauses. The Second Circuit found no basis for any of these claims for largely the reasons set forth in the quotation above. The court additionally wrote:

It is not difficult for us to understand why the Secretary decided that forms should be printed and oral instructions given in the English language: English is the national language of the United States.... A decision to provide Spanish language services as well as English would merely shift the alleged discrimination to all other non-English-speaking groups.

717 F.2d at 42. The court then held that the Secretary's actions clearly bore a rational relationship to a legitimate governmental purpose:

We need only glance at the role of English in our national affairs to conclude that the Secretary's actions are not irrational. Congress conducts its affairs in English, the executive and judicial branches of government do likewise. In addition, those who wish to become naturalized citizens must learn to read English.... Given these factors, it is not irrational for the Secretary to choose English as the one language in which to conduct her official affairs.

*Id.* at 42–43.

As in *Soberal–Perez v. Heckler,* although plaintiff's complaint claims that the Housing Authority's failure to provide documents in Spanish reflects a preference for English-speaking people over Hispanics, the Housing Authority's action reflects, at most, a preference for English over all other languages. Defendant is entitled to summary judgment on plaintiff's Title VI claim.

## IV.

■ Plaintiff also contends that her tenancy was terminated in violation of the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.,* Title VIII of the Civil Rights Act of 1968, because the notice and the hearing officer's decision were not provided in Spanish. We need not dwell long on this claim because it suffers from the same infirmity as the Title VI claim and must be dismissed as well. Under 42 U.S.C. § 3604(b), it is unlawful

[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

"The Act is violated by 'discriminatory actions, or certain actions with discriminatory effects, that affect the availability of housing.'" *Huertas v. East River Housing Corp.,* 674 F.Supp. 440, 454 (S.D.N.Y.1987), quoting *Southend Neighborhood Improvement Ass'n v. County of St. Clair,* 743 F.2d 1207, 1210 (7th Cir.1984). Title VIII thus outlaws discrimination against persons in the same classifications protected under Title VI (race, color and national origin) and adds religion, sex and familial status as shielded classifications.

Again, however, plaintiff's allegations do not state a case of discrimination on the basis of any of these Congressionally-mandated categories, but rather on the basis of language. The "discrimination," if there be any, is against all non-English speaking tenants of the Housing Authority, including those who speak Chinese, Korean, Yiddish, Greek, Russian or any other language. All non-English speaking people are equally affected by English-only forms. There is no distinct impact on those of Hispanic origin. Plaintiff's demand for bilingual Housing Authority correspondence

would place unfairly on all who spoke neither Spanish nor English the burden of which she here complains. The Housing Authority is landlord to about 180,000 apartments. The purpose of the Fair Housing Act is to provide "for fair housing throughout the United States." 42 U.S.C. § 3601. Nothing could be fairer than to apply the English language uniformly to all tenants of whatever national origin.[15]

## V.

■ The final issue for consideration is plaintiff's Second Claim: that, although notified by plaintiff that her income had decreased, the defendants failed to decrease the amount of plaintiff's rent during the relevant period in violation of 42 U.S.C. § 1437a, known as the Brooke Amendment to the Housing Act of 1937. This statutory provision sets a ceiling, keyed to monthly income, on the amount of rent to be charged low-income tenants in housing projects like the Castle Hill Houses that receive federal subsidies pursuant to regulations of the Department of Housing and Urban Development.

Contrary to defendants' contention, this claim is not foreclosed under 42 U.S.C. § 1983 by the existence of a state remedy, *i.e.*, Article 78, because it alleges violation of a right secured by a federal statute rather than by the due process clause. *See Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); *See also Wilder v. Virginia Hospital Ass'n*,

496 U.S. 498, 110 S.Ct. 2510, 2516–18, 110 L.Ed.2d 455 (1990); *West Virginia University Hospitals, Inc. v. Casey*, 885 F.2d 11, 22 and n. 2 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990). In *Wright v. Roanoke Redevelopment and Housing Authority*, the Supreme Court specifically decided that public housing tenants have a private right of action in the federal courts under § 1983 for violations of the Brooke Amendment. *See also Beckham v. New York City Housing Authority*, 755 F.2d 1074, 1077 (2d Cir.1985). Thus, "[i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961), *overruled in part not relevant here, Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Whether plaintiff was improperly overcharged for her rent should be a fairly straightforward question of fact answerable on papers. However, the papers submitted do not appear to provide the answer. Accordingly, oral argument on this issue shall be scheduled for July 18, 1991 at 11:30 a.m. If trial on this issue is found necessary, it will be scheduled at that time. The parties shall cooperate before then in providing discovery if needed on this issue.

## CONCLUSION

Defendants' motion for summary judgment is denied at this time on plaintiff's

---

**15.** In an attempt to show a disparate impact of the Housing Authority's procedure on Hispanic persons, plaintiff has submitted evidence which, if taken at face value, would show that approximately 50,000 tenants of the Housing Authority are Hispanic, of which approximately 17,000, or 10% of the tenant population citywide, "do not speak English well or at all." Affidavit of Terry Rosenberg at 10. Such evidence, however, is insufficient to create a material issue of fact for plaintiff herein. If a disparate impact analysis were to be used, the question to be addressed would be whether those of plaintiff's national origin lose their tenancies as a result of their inability to speak English. Plaintiff has produc-

ed no evidence to show that Hispanic persons generally are disadvantaged by the Authority's English-only forms. Indeed, it is far more likely that, upon receipt of Housing Authority documents that one is unable to read, one seeks assistance from one's family, friends, neighbors, Housing Authority assistant or other governmental representative. The government may reasonably assume that one will seek such help promptly if unable to read the document. *See, e.g., Guerrero v. Carleson*, 512 P.2d at 836. Plaintiff has no evidence that the vast majority of non-English speaking Hispanic tenants do not deal adequately with their language problem in such instances.

Second Claim and granted on all other claims.[16]

16. Defendant Emanuel Popolizio, the chairman of the New York City Housing Authority, will be dismissed at this time. The personal involvement of a defendant in the deprivation alleged by a plaintiff is a prerequisite to an award of damages under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987); *McCann v. Coughlin,* 698 F.2d 112, 125 (2d Cir.1983); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Nowhere in her complaint does plaintiff allege Popolizio played any role in or had any knowledge of the events of which she complains. *Compare Kaminsky v. Rosenblum,* 737 F.Supp. 1309, 1317–18 (S.D.N.Y.1990), *appeal dismissed,* 929 F.2d 922 (2d Cir.1991); *Eng v. Coughlin,* 684 F.Supp. 56, 66–67 (S.D.N.Y. 1988).